# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **STATE OF OKLAHOMA**, *ex rel*, **OKLAHOMA STATE DEPARTMENT OF EDUCATION,** and **RYAN WALTERS**, in his official capacity As Superintendent of Public Instruction, And in his individual capacity, <br><br> *Plaintiff*, <br><br> -v.- <br><br> **FREEDOM FROM RELIGION FOUNDATION** <br><br><br> *Defendant*. | **Case No.**   CIV-25-94-GLJ |

/s/ *Jacquelyne K. Phelps*

Jacquelyne K. Phelps
Oklahoma Bar No. 4366
Assistant General Counsel
Oklahoma State Department of
Education
2500 N. Lincoln Blvd. Ste. 500
Oklahoma City, OK 73105
Tel: 405-521-2983
Cell: 405-464-3768
Email: Jacki.Phelps@sde.ok.gov

*Counsel for Plaintiffs Superintendent Walters*
*& Oklahoma State Department of*
*Education*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES.........................................................................................ii

INTRODUCTION ........................................................................................................1

COMPLAINT ...............................................................................................................3

PARTIES.......................................................................................................................8

JURISDICTION AND VENUE..................................................................................10

BACKGROUND ........................................................................................................11

    I.   LEGAL BACKGROUND .................................................................................11

    II.  FACTUAL BACKGROUND.............................................................................12

CLAIMS FOR RELIEF ..............................................................................................15

    COUNT 1—DECLARATORY RELIEF .......................................................15

    COUNT 2—INJUNCTIVE RELIEF ............................................................16

CERTIFICATION AND CLOSING ...........................................................................17

RELIEF REQUESTED ...............................................................................................17

PRAYER FOR RELIEF..............................................................................................18

CERTIFICATE OF SERVICE....................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Espinoza v. Montana Dept. of Revenue*, 591 U.S. 464, 498 (2020) ........................................................3

*Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992) ........................................................................5

*McCreary Cnty., Ky. v. Am. C.L. Union of Ky.*, 545 U.S. 844, (2005). ..............................................2

*Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, (1963) ..................................................2

*Stone v. Graham*, 449 U.S. 39, 42-43 (1980) ....................................................................................2

*Tinker v. Des Moines Ind. Comm. Sch. Dist.*, 393 U.S. 503, 506 (1963) ..........................................12

## Statutes

20 U.S.C. § 6314(b)(1)(B)(iii)(I) ........................................................................................................12

25 O.S. § 2003 ....................................................................................................................................2

28 U.S.C. § 1331 ..............................................................................................................................10

28 U.S.C. § 1391(b)(2) .....................................................................................................................11

28 U.S.C. § 2201(a) ...................................................................................................................10, 16

28 U.S.C. § 2202 ..............................................................................................................................10

70 O.S. § 1-105 ..........................................................................................................................3, 15

70 O.S. § 1-105(A) .............................................................................................................................5

70 O.S. § 1-105(C) ........................................................................................................................4, 8

70 O.S. § 11-101 ........................................................................................................................11, 12

70 O.S. § 11-101.1 ...............................................................................................................1, 11, 14

70 O.S. § 11-101.2 ....................................................................................................................1, 14

70 O.S. § 19-121 ...............................................................................................................................5

70 O.S. § 3-104 ...................................................................................................15

70 O.S. § 3-107.1 ............................................................................................... 4, 5

Title 70 O.S. § 1-105 ....................................................................................... 9, 11

## Other Authorities

*1 Samuel* 17:1-25:7 .............................................................................................8

Freedom from Religion Foundation, "About FFRF," available at: https://ffrf.org/about/welcome-to-the-freedom-from-religion-foundation/ ............ 5, 8, 9

Freedom from Religion Foundation, "FFRF shocked by chaplain at Oklahoma City school," available at: https://ffrf.org/news/releases/ffrf-shocked-by-chaplain-at-oklahoma-city-school/ ....................................................................................................................14

Freedom from Religion Foundation, "FFRF stops government prayer in Oklahoma (Sept. 10, 2012), available at: https://ffrf.org/legal/other-legal-successes/ffrf-stops-government-prayer-in-oklahoma-sept-10-2012/ ..............................................................................6

Freedom from Religion Foundation, "Police & Fire Department in Oklahoma Will Not Fundraise for Salvation Army (June 18, 2019), available at: https://ffrf.org/legal/other-legal-successes/police-fire-department-in-oklahoma-will-not-fundraise-for-salvation-army/ ..........................................................................................................................6

Freedom from Religion Foundation, "The Oklahoma City Bombing by Joann Bell (March 1996), available at: https://ffrf.org/fttoday/march-1996/articles-march-1996/the-oklahoma-city-bombing/ ....................................................................................................7

Freedom from Religion Foundation, available at: https://ffrf.org/page/17/?s=oklahoma&swp_form%5Bform_id%5D=4 (last accessed Mar. 14, 2025)..........................................................................................................................7

Freedom From Religion Foundation, *Freethought Today*, "A Concise Case Against Christianity," available at: https://www.freethoughttoday.com/free/miklos-jako-a-concise-case-against-christianity/...............................................................................................................10

Freedom From Religion Foundation, https://ffrf.org/legal/other-legal-successes/ffrf-worked-to-put-a-stop-to-multiple-violations-of-students-first-amendment-rights-in-oklahoma-march-2025/ .......................................................................................................2

Oklahoma Historical Society, *The Encyclopedia of Oklahoma History & Culture*, "Achille," available at: https://www.okhistory.org/publications/enc/entry?entry=AC001 ................8

Oklahoma School Report Cards, "Oklahoma State Report Card," available at: https://oklaschools.com/state/ .................................................................................4

Oklahoma Social Studies Standards 5.2.4 ..........................................................12

Oklahoma Social Studies Standards 6.3.2 ..........................................................12

Oklahoma Social Studies Standards 7.3.3 ..........................................................12

Oklahoma Social Studies Standards OK1.4..........................................................12

Oklahoma Social Studies Standards WG3.1 ..........................................................12

Oklahoma Social Studies Standards WG3.5 ..........................................................12

Oklahoma Social Studies Standards WH1.2 ..........................................................12

Oklahoma State Department of Education, Newsroom, "Walters Announces First in the Nation Bible Purchase," Nov. 14, 2024, available at: https://oklahoma.gov/education/newsroom/2024/november/walters-announces-first-in-the-nation-bible-purchase.html .................................................................13

Oklahoma State Department of Education, Newsroom, "Walters Announces Office of Religious Liberty & Patriotism," Nov. 12, 2024, available at: https://oklahoma.gov/education/newsroom/2024/november/walters-announces-office-of-religious-liberty-and-patriotism.html........................................................ 12, 13

Pew Research Center, "How Religious is Your State: Oklahoma," available at: https://www.pewresearch.org/short-reads/2016/02/29/how-religious-is-your-state/?state=oklahoma.................................................................................4

**Constitutional Provisions**

Okla. Const. art. VI, § 1.................................................................................9

Okla. Const. art. XIII, § 5 ..............................................................................8

U.S. Const. amend. I.....................................................................................11

## INTRODUCTION

From its inception, the Establishment Clause of the First Amendment was intended to act as a shield, protecting individual citizens from governmental overreach regarding religion and religious practices. Over time, what was originally intended to be a shield has become a sword, weaponizing the Establishment Clause and vitiating the Free Exercise Clause. Nowhere is that weaponization more prominent than in our public schools.

The Oklahoma statues governing public schools provide that "each school district shall permit those students and teachers who wish to do so to participate in voluntary prayer." 70 O.S. § 11-101.1. The statues additionally provide that "each school district shall ensure that the public schools within the district observe approximately one minute of silence each day for the purpose of allowing each student, in the exercise of his or her individual choice, to reflect, meditate, pray, or engage in any other silent activity" so long as such activity "does not interfere with, distract, or impede other students in the exercise of their individual choices." *Id.* at § 11-101.2.

The Bible has long been recognized for its secular value. Given this historical context, new and existing standards, approved by the State Board of Education ("SBE"), recognize and encourage the use of the Bible. That is particularly true with respect to high school history classes. The SBE's curricular standards comport with United States Supreme Court, which recognizes the secular value of the Bible. *See e.g.,*

1

*Stone v. Graham*, 449 U.S. 39, 42-43 (1980); *Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, (1963); *McCreary Cnty., Ky. v. Am. C.L. Union of Ky.*, 545 U.S. 844, (2005).

However, when Achille Public Schools ("APS") administrators exercised their statutorily required duties to allow students to participate in voluntary prayer, the Foundation for Freedom from Religion ("FFRF") threatened the district with demands that APS administration must forbid its students from exercising their statutory and constitutional rights or face legal consequences. Furthermore, despite the incontrovertible fact that no student was forced to participate in prayer or any other religious activities, the FFRF insisted that "[t]he district must cease permitting teachers to give students bible lessons and it must ensure its schools refrain from coercing student to observe and participate in school-sponsored prayer."[1]

Notwithstanding the plain text of Oklahoma's statute, which clearly and unambiguously states that prayer is for any students "who wish to do so," FFRF believes that prayers is being forced upon students in APS. Similarly, FFRF completely ignores the plain text of 25 O.S. § 2003, known as the "Parents' Bill of Rights," which contains multiple "opt-out" provisions regarding curriculum, instruction, and participation. Indeed, if the "concerned parent" that allegedly contacted FFRF was as

---

[1]    Freedom from Religion Foundation, "FFRF worked to put a stop to multiple violations of students' First Amendment rights in Oklahoma (March 2025)", available at: https://ffrf.org/legal/other-legal-successes/ffrf-worked-to-put-a-stop-to-multiple-violations-of-students-first-amendment-rights-in-oklahoma-march-2025/ (last accessed Mar. 12, 2025).

"concerned" as FFRF claims, that parent need only have informed the student's teacher that their child (or children) wished to take advantage of the multitude of options statutorily available under Oklahoma's Parents' Bill of Rights regarding schools and school districts.

Title 70 of the Oklahoma Statutes delegates "the responsibility of determining the policies and directing the administration and supervision of the public school system of the state" to the OSDE and the State Superintendent of Public Instructions. *Id.* at § 1-105. FFRF has interfered with and will continue to interfere with OSDE and Superintendent Walters's statutory authority to govern Oklahoma's public schools. Declaratory and injunctive relief is both necessary and proper to ensure that OSDE and Superintendent can faithfully execute their duties, as well as protect the constitutional rights of Oklahoma's public school students.

## COMPLAINT

1.   "Trendy disdain for deep religious conviction" is "evident in the fact that, unlike other constitutional rights, the mere exposure to religion can render an offended observer sufficiently injured to bring suit [] even if he has not been coerced in any way to participate in a religious practice." *Espinoza v. Montana Dept. of Revenue*, 591 U.S. 464, 498 (2020).

2.      According to the Pew Research Center, Oklahoma is "tied for the 8th most religious state overall" with "66% of adults" identifying as "highly religious" and "71% say[ing] they believe in God with absolute certainty."[2]



3.      As of October of the 2023-2024 school year, approximately 698,923 students were enrolled in an Oklahoma school.[3]

4.      As President of the State Board of Education, Superintendent Walters is tasked with overseeing the design and implementation of the curriculum used by Oklahoma schools, including instructional materials, as well as overseeing the OSDE. *See* 70 O.S. § 1-105(C); 70 O.S. § 3-107.1. This includes, but is not limited

---

[2]     Pew Research Center, "How Religious is Your State: Oklahoma," available at: https://www.pewresearch.org/short-reads/2016/02/29/how-religious-is-your-state/?state=oklahoma (last accessed Mar. 12, 2025).

[3]     Oklahoma School Report Cards, "Oklahoma State Report Card," available at: https://oklaschools.com/state/ (last accessed Mar. 12, 2025).

to, adoption of rules, adoption of instructional materials including textbooks, and adoption of educational policies and standards. *See* 70 O.S. § 3-107.1; 70 O.S. § 19-121.

5.   OSDE has the statutory responsibility of "determining the policies and directing the administration and supervision of the public school system of the state." 70 O.S. § 1-105(A).

6.   FFRF has interfered with and continues to interfere with Superintendent Walters's and OSDE's statutory duty to oversee Oklahoma's public schools and their duty to implement curricular standards, investigate any complaints levied against an Oklahoma school, and advocate for its students and parents. *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992) (noting that to have standing to sue, a plaintiff must allege that it "ha[s] suffered an injury in fact—an invasion of a legally protected interest" that "is (a) concrete and particularized and (b) actual or imminent"; that the "injury is fairly traceable to the challenged action of the defendant"; and "it is likely [] that the injury will be redressed by a favorable decision.")

7.   FFRF claims as its basis for such interference as its desire to "promote the constitutional principle of separation of church and state."[4] Curiously, neither

---

[4]    Freedom from Religion Foundation, "About FFRF," available at: https://ffrf.org/about/welcome-to-the-freedom-from-religion-foundation/ (last accessed Mar. 12, 2025).

the word "separation" nor the word "church" appears anywhere in the text of the United States Constitution. By contrast, the Declaration of Independence makes reference to God, a "Creator," a "Supreme Judge," and "Divine Providence," thereby solidifying the notion that a complete "separation of church and state" was never the intention of the Nation's founders.

8.    Despite having no standing whatsoever to do so, FFRF continuously threatens Oklahoma Public Schools with demand letters under the guise speaking on behalf of anonymous "concerned parents" who have contacted them. Notably, FFRF's concern for how Oklahoma chooses to govern its own state is not limited to how its elected officials manage its schools. FFRF has "warned" the Oklahoma Water Resources Board to "discontinue prayers" that opened its regular monthly meetings;[5] has demanded that state police and fire departments not be permitted to fundraise for the Salvation Army;[6] and has generally interfered any time any duly elected state official suggests any proposition that is

---

[5]    Freedom from Religion Foundation, "FFRF stops government prayer in Oklahoma (Sept. 10, 2012), available at: https://ffrf.org/legal/other-legal-successes/ffrf-stops-government-prayer-in-oklahoma-sept-10-2012/ (last accessed Mar. 14, 2025).

[6]    Freedom from Religion Foundation, "Police & Fire Department in Oklahoma Will Not Fundraise for Salvation Army (June 18, 2019), available at: https://ffrf.org/legal/other-legal-successes/police-fire-department-in-oklahoma-will-not-fundraise-for-salvation-army/ (last accessed Mar. 14, 2025).

even remotely "religious."[7] In what is perhaps its most egregious overreach in its condemnation of Oklahomans, FFRF had the audacity to paint Oklahoma City's response to the 1996 bombing of the Alfred P. Murrah Federal Building as an opportunity for "greedy politicians" to have "a media opportunity" through televised "prayer services [] held everywhere—in city, state, and federal buildings"[.][8] The author literally paints the State's—and indeed the Nation's—response to its grief as "da da da da da."[9] In other words, their actions are clearly not about any concern for separation of church and state. In reality, their actions are nothing more than the very prejudice, hatred, and bigotry they pretend to despise hidden behind a thinly woven cloak of constitutional championship.

---

[7] *See generally* Freedom from Religion Foundation, available at: https://ffrf.org/page/17/?s=oklahoma&swp_form%5Bform_id%5D=4 (last accessed Mar. 14, 2025). There are twenty-three (23) separate pages of material relating specifically to lawsuits and demands on Oklahoma officials, towns, cities, and groups.

[8] Freedom from Religion Foundation, "The Oklahoma City Bombing by Joann Bell (March 1996), available at: https://ffrf.org/fttoday/march-1996/articles-march-1996/the-oklahoma-city-bombing/ (last accessed Mar. 14, 1995).

[9] *Id.*

9.      Achille, Oklahoma, is a small, rural town whose population in 2020 was fewer than 400 residents.[10] By contrast, FFRF boasts nearly 40,000 members.[11] To invoke an analogy that is sure to draw FFRF's ire, FFRF is a Goliath, seeking to destroy David with sheer brute force—despite having questionable (if non-existent) standing to do so. *See 1 Samuel* 17:1-25:7.

## PARTIES

9.      Oklahoma is a sovereign state of the United States of America ("U.S.A.").

10.     Plaintiff Ryan Walters is the Oklahoma Superintendent of Public Instruction ("Superintendent"), the President of the State Board of Education ("SBE") and as the executive officer, controls and directs the State Department of Education ("OSDE"). *See* Okla. Const. art. XIII, § 5 and 70 O.S. § 1-105(C). The Superintendent's office is located at the Oliver Hodge Building, 2500 N. Lincoln Blvd., Oklahoma City, Oklahoma 73105.

---

[10]     Oklahoma Historical Society, *The Encyclopedia of Oklahoma History & Culture*, "Achille," available at: https://www.okhistory.org/publications/enc/entry?entry=AC001 (last accessed Mar. 14, 2025).

[11]     Freedom from Religion Foundation, "About FFRF," available at: https://ffrf.org/about/welcome-to-the-freedom-from-religion-foundation/ (last accessed Mar. 12, 2025).

11.   The Superintendent of Public Instruction for the State of Oklahoma is a constitutionally created position. Okla. Const. art. VI, § 1. The Superintendent is an elected official, chosen by the people of the State of Oklahoma.

12.   Plaintiff The Oklahoma State Department of Education ("OSDE") is the "department of the state government in which the agencies created or authorized by the Constitution and Legislature are placed and charged with the responsibility of determining the policies and directing the administration and supervision of the public school system of the state." *See* Title 70 O.S. § 1-105(A). Superintendent Walters is the executive officer of the State Board of Education and holds control and direction of the State Department of Education. *Id.* at § 1-105(C).

13.   Defendant Freedom from Religion Foundation ("FFRF") is allegedly a "non-profit, tax-exempt organization" incorporated in the State of Wisconsin.[12]

14.   FFRF markets itself as "the nation's largest freethought association with more than 39,000 freethinkers: atheists, agnostics, and skeptics of any pedigree."[13]

---

[12]   Freedom from Religion Foundation, "About FFRF," available at: https://ffrf.org/about/welcome-to-the-freedom-from-religion-foundation/ (last accessed Mar. 12, 2025).

[13]   *Id.*

9

15.    FFRF states that its purpose is "to promote the constitutional principle of separation of church and state and to educate the public on matters relating to nontheism."[14]

16.    As an example of their principal beliefs, and writing for FFRF's publication "Freethought Today," some members state that "[s]eparation of church and state is important, but so is *refuting Christianity itself*."[15]

## JURISDICTION AND VENUE

17.    This Court has subject-matter jurisdiction over this case because it arises under the laws of the United States. *See* 28 U.S.C. §§ 1331, 2201 and 2202.

18.    An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief under 28 U.S.C. §§ 2201-02 and its inherent equitable powers. *See Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1160 (10th Cir. 2023) (noting that "an injury-in-fact exists where a chilling effect arises from an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences[.]")

---

[14]    *Id.*

[15]    Freedom From Religion Foundation, *Freethought Today*, "A Concise Case Against Christianity," available at: https://www.freethoughttoday.com/free/miklos-jako-a-concise-case-against-christianity/ (last accessed Mar. 13, 2025) (emphasis added).

19.  Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the State's claims occurred in this district.

## BACKGROUND

## I.    LEGAL BACKGROUND

20.  The First Amendment provides that the government "shall make no law respecting an establishment of religion, *or prohibiting the free exercise thereof*." U.S. Const. amend. I (emphasis added).

21.  Oklahoma law provides that public schools provide that "each school district shall permit those students and teacher who wish to do so to participate in voluntary prayer." 70 O.S. § 11-101.1. Oklahoma law additionally provides that, while "[n]o sectarian or religious doctrine shall be taught or inculcated in any of the public schools," "nothing [] shall be construed to prohibit the reading of the Holy Scriptures." *Id.* at § 11-101.

22.  Oklahoma law further provides that the State Superintendent and the OSDE are "placed and charged with the responsibility of determining the policies and directing the administration and supervision of the public school system of the state." *See* 70 O.S. § 1-105.

23.  By statute, OSDE is charged with promulgating academic standards. These standards have historically included examining the role religion and religious documents, particularly when in the context of the founding of the nation. *See*

11

*e.g.*, including but not limited to Oklahoma Social Studies Standards 5.2.4; Oklahoma Social Studies Standards 6.3.2; Oklahoma Social Studies Standards 7.3.3; Oklahoma Social Studies Standards OK1.4; Oklahoma Social Studies Standards WG3.1; Oklahoma Social Studies Standards WG3.5; and Oklahoma Social Studies Standards WH1.2. *See also* 70 O.S. § 11-101.

24. Federal law provides that schools are required to "address the needs of all children in the school" "through activities which may include (I) counseling, school-based mental health programs," and "other strategies to improve students' skills outside the academic subject areas[.]" 20 U.S.C. § 6314(b)(1)(B)(iii)(I).

## II.    FACTUAL BACKGROUND

25. Ryan Walters assumed his elected office on or about January 9th, 2023.

26. Throughout his tenure in office, Superintendent Walters has actively sought to address the "dismantling of faith and family values in public schools" while championing the notion that "American citizens do not give up their right to practice their faith at the schoolhouse door or anywhere else."[16] *See Tinker v. Des Moines Ind. Comm. Sch. Dist.*, 393 U.S. 503, 506 (1963) ("It can hardly be argued

---

[16]    Oklahoma State Department of Education, Newsroom, "Walters Announces Office of Religious Liberty & Patriotism," Nov. 12, 2024, available at: https://oklahoma.gov/education/newsroom/2024/november/walters-announces-office-of-religious-liberty-and-patriotism.html (last accessed Mar. 12, 2024).

that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.")

27.    On November 14, 2024, Superintendent Walters announced his directive to provide Bibles "explicitly for use in schools as an academic and literary resource," highlighting the need to provide "critical historical, cultural, and literary context for our students."[17] As the Supreme Court has long recognized,

28.    Additionally, Superintendent Walters established the "Office of Religious Liberty and Patriotism" at the State Department of Education in order to "oversee the investigation of abuses to individual religious freedom" as well as "support[] teachers and students when their constitutional rights are threatened by well-funded, out of state groups[.]"[18]

29.    In keeping with Superintendent Walters's directive that Bibles may be used as secular, instructional materials, a high school history teacher in APS implemented some Biblical context as part of his history class.

---

[17]    Oklahoma State Department of Education, Newsroom, "Walters Announces First in the Nation Bible Purchase," Nov. 14, 2024, available at: https://oklahoma.gov/education/newsroom/2024/november/walters-announces-first-in-the-nation-bible-purchase.html (last accessed Mar. 12, 2025).

[18]    Oklahoma State Department of Education, Newsroom, "Walters Announces Office of Religious Liberty & Patriotism," Nov. 12, 2024, available at: https://oklahoma.gov/education/newsroom/2024/november/walters-announces-office-of-religious-liberty-and-patriotism.html (last accessed Mar. 12, 2024).

30.    Consistent with 70 O.S. § 11-101.1 and § 11-101.2, APS administrators provide daily student-led morning announcements which include a statutorily required moment of reflection. Occasionally, a student leading the announcements engages in a voluntary prayer during the moment reflection.

31.    On or about December 17, 2024, APS Superintendent Rick Beene received a letter from FFRF regarding "unconstitutional school-sponsored prayer and bible readings."[19]

32.    In their letter to Superintendent Beene, FFRF claimed that "a concerned parent report[ed] that the District implemented a policy allowing teachers to read Bible verses at the beginning of their classes" and that "the District has a custom and practice of beginning each school day with a 'mandatory student-led prayer' over the schools' intercom systems."[20]

33.    FFRF stated that "the District must cease permitting instructors to teach students Bible verses, and it must end its schools' practice of beginning each day with school-sponsored student-led prayers."[21]

34.    Previously, FFRF expressed that it was "shocked by [a] chaplain at [an] Oklahoma School."[22]

---

[19]    *See* attachment, Exhibit B.
[20]    *Id.*
[21]    *Id.*
[22]    Freedom from Religion Foundation, "FFRF shocked by chaplain at Oklahoma City school," available at: https://ffrf.org/news/releases/ffrf-shocked-by-chaplain-at-oklahoma-city-school/ (last accessed Mar. 12, 2025).

35.    In a letter to Putnam City Schools Superintendent, Fred Rhodes, FFRF claimed that "[p]ublic school football teams cannot appoint or employ a chaplain, seek out a spiritual leader for the team, or agree to have a volunteer team chaplain[.]"[23]

36.    FFRF then directed Superintendent Rhodes to "commence an immediate investigation into this complaint and take action to stop coaches and other school representatives from organizing, leading, or participating in prayers with student athletes at practices or games" and to "take appropriate actions to end its chaplaincy program."[24]

37.    As part of their duties, the Plaintiffs are tasked, without limitation, with the following: (a) developing and implementing state curriculum standards; (b) developing and maintaining approved instructional materials; (c) providing non-curricular support including counseling and mental health; (d) directing the administration and policies of the individual school districts; and (e) ensuring that the constitutional rights of Oklahoma students and school staff are protected. 70 O.S. § 1-105; 70 O.S. § 3-104.

## CLAIMS FOR RELIEF

## COUNT 1—DECLARATORY RELIEF

---

[23]    *See* attachment, Exhibit C.
[24]    *Id.*

15

38.   The Plaintiffs incorporate fully by reference the preceding paragraphs as if set forth at length herein.

39.   Under the Declaratory Judgment Act, the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

40.   There is an actual controversy within this Court's jurisdiction. Therefore, the Plaintiffs seek declaratory judgment regarding all Counts and Claims set herein.

## COUNT 2—INJUNCTIVE RELIEF

41.   The Plaintiffs incorporate fully by reference the preceding paragraphs as if set forth at length herein.

42.   The Plaintiffs will have an irreparable injury, should the Defendant be permitted to continue its threatening and harassing behavior. By contrast, the Defendant cannot show any harm whatsoever, should an injunction be granted, as the Defendant has no interest in how the State of Oklahoma chooses to govern its citizens, how the duly elected Superintendent of Public Instruction performs the duties of his office, or how Oklahoma's public schools implement curriculum and standards set forth by the OSDE and the State Board of Education. Granting an injunction weighs in favor of public interest. If the citizens of Oklahoma are unhappy with their elected officials, the solution is at the ballot box, and not in the hands of an out-of-state organization with little else to do but issue non-stop cease and desist letters to rural and independent school districts in states that are

16

half a country away from them. Finally, the Plaintiffs can show likely success on the merits. Supreme Court precedent has long-recognized the secular value of religious texts, including the Bible, in school settings, as well as the secular value of chaplains as mentors and counselors in government-run institutions.

43.    The Plaintiffs request that this Court issue an injunction enjoining the Defendants from usurping the constitutional and statutory authorities delegated to the State Superintendent and the State Department of Education.

## CERTIFICATION AND CLOSING

44.    Pursuant to Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (a) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (b) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (c) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (d) the complaint otherwise complies with the requirements of Rule 11.

## RELIEF REQUESTED

45.    The Plaintiffs respectfully request the following relief:

a.    The Court declares that the Defendant's acts, omissions, and conduct are in violation of the Plaintiffs' respective rights and duties under both federal and state law;

b.    That the Court enjoin the Defendant from taking any action that would prevent APS faculty, staff, or students from exercising their rights under the Free Exercise clause of the First Amendment and/or their obligations under Oklahoma statutes;

c.    That the Court grant all other relief the Court deems just and proper, as well as reasonable attorneys' fees and the costs of this action.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, the Plaintiffs pray for the entirety of the relief requested herein.

Dated this 31st day of March 2025.

Respectfully Submitted,

/s/ *Jacquelyne K. Phelps*
JACQUELYNE K. PHELPS
Oklahoma Bar No. 34366
Assistant General Counsel
Oklahoma State Department of Education
2500 N. Lincoln Blvd. Ste. 500
Oklahoma City, OK 73105
Tel: 405-521-2983
Cell: 405-464-3768
Email: Jacki.Phelps@sde.ok.gov
*Counsel for Plaintiffs Superintendent Walters & OSDE*

18

## CERTIFICATE OF SERVICE

The undersigned Jacquelyne K. Phelps, an attorney with The Oklahoma State Department of Education, hereby certifies that on March 31, 2025, I filed the foregoing with the Clerk of the Court using the CM/ECF system.

Respectfully Submitted,

/s/Jacquelyne K. Phelps
JACQUELYNE K. PHELPS
Oklahoma Bar No. 34366
Assistant General Counsel
Oklahoma State Department of Education
2500 N. Lincoln Blvd. Ste. 500
Oklahoma City, OK 73105
Tel: 405-521-2983
Cell: 405-464-3768
Email: Jacki.Phelps@sde.ok.gov

*Counsel for Plaintiffs Superintendent Walters & OSDE*

19