# EXHIBIT B

# FREEDOM FROM RELIGION *foundation*

P.O. BOX 750 · MADISON, WI 53701 · (608) 256-8900 · WWW.FFRF.ORG

December 17, 2024

**SENT VIA EMAIL & U.S. MAIL:** rbeene@achilleisd.org

Superintendent Rick Beene
Achille Public Schools
P.O. Box 280
Achille, OK 74720

Re:   Unconstitutional school-sponsored prayer and bible readings

Dear Superintendent Beene:

I am writing on behalf of the Freedom From Religion Foundation (FFRF) regarding unconstitutional school-sponsored prayer and bible readings recently reported in Achille Public Schools. As you may recall, FFRF is a national nonprofit organization with over 40,000 members across the country, including members in Oklahoma. We appreciate your response to our previous January 2021 letter regarding a nativity scene on school property. We hope to work with the District to address this issue as well.

A concerned parent reports that the District implemented a policy allowing teachers to read Bible verses at the beginning of their classes. It's our understanding this policy applies to both Achille Elementary and Achille High School. Our parent-complainant states the District informed students at the beginning of the school year that there would be "optional bible verse readings in all of their classes." For example, our complainant's child's history teacher now begins class by picking a Bible verse for the day and asking a student to read the verse to the class. Reportedly the Bible verses have no bearing on the actual subjects being taught and instead appear to be blatantly intended as a way to teach public school students the Bible in a devotional manner.

Additionally, our complainant reports that the District has a custom and practice of beginning each school day with "mandatory student-led prayer" over the schools' intercom systems. Our complainant states this policy has been in effect, at least informally, for years. An official agenda from the Board of Education's October 14, 2024 meeting states that the Board considered whether to "approve or not approve" a "school policy on Voluntary Private Prayer and Moment of Silence."[1] We're informed that after the morning bell a student announces "a moment of silence or prayer," followed by the student praying over the intercom. It's our understanding this morning intercom prayer is taking place in both District schools. Our complainant tells us that students cannot skip the morning prayer since it occurs after the first period has already started, so students are "counted late" if they arrive after the prayer.[2]

The District must cease permitting teachers to give students Bible lessons and it must ensure its schools refrain from coercing students to observe and participate in school-sponsored prayer.

---

[1] Achille Public Schools Board of Education Agenda, October 14, 2024, https://files.gabbart.com/32/agenda_-_october_14_2024.pdf.
[2] The District's official student handbook states that a "student is tardy who is not in the student's seat when the bell to begin the period sounds," https://www.achilleisd.org/375096_2.

### School-sponsored prayer is unconstitutional

The Supreme Court has consistently struck down school-sponsored prayers, even when student-led. *See, e.g., Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000) (striking down school-sponsored prayers at football games); *Lee v. Weisman*, 505 U.S. 577 (1992) (finding prayers at public school graduations impermissible); *Wallace v. Jaffree*, 472 U.S. 38 (1985) (overturning law requiring daily "period of silence not to exceed one minute . . . for meditation or daily prayer"); *Sch. Dist. Abington Twp. v. Schempp*, 374 U.S. 203 (1963) (declaring school-sponsored devotional Bible reading and recitation of the Lord's Prayer unconstitutional); *Engel v. Vitale*, 370 U.S. 421 (1962) (holding formal prayer in public schools unconstitutional). In each of these cases, the Supreme Court struck down coercive school-sponsored prayer because it constitutes government favoritism toward religion, which violates the Establishment Clause of the First Amendment. "It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise." *Lee*, at 587. Here, the District has crossed the constitutional line by permitting schools to hold student-led prayer over the intercom at the beginning of each school day.

The Supreme Court's decision in *Kennedy v. Bremerton School District* did not overturn the above cited cases and does not apply here. In *Kennedy*, the Court held that a high school football coach's personal, private post-game prayer was constitutional. 597 U.S. 507, 513–14 (2022). Throughout its opinion, the Court repeatedly stressed that the coach quietly prayed alone. *Id.* (the coach "offered his prayers quietly while his students were otherwise occupied."). The prayers "were not publicly broadcast or recited to a captive audience. Students were not required or expected to participate." *Id.* at 542. In contrast, the District's schools are allegedly broadcasting prayers over the intercom every morning to a captive audience of students.

Even if the school now claims parents can opt their children out of the morning prayers—though our complainant and the District's official student handbook states students will be tardy if they arrive after the prayers—voluntariness would not excuse the constitutional violation. *See Lee*, 505 U.S. at 596 ("It is a tenet of the First Amendment that the State cannot require one of its citizens to forfeit his or her rights and benefits as the price of resisting conformance to state-sponsored religious practice."); *Schempp*, 374 U.S. at 288 (Brennan, J., concurring) ("Thus, the short, and to me sufficient, answer is that the availability of excusal or exemption simply has no relevance to the establishment question"); *Mellen v. Bunting*, 327 F.3d 355, 372 (4th Cir. 2003) ("VMI cannot avoid Establishment Clause problems by simply asserting that a cadet's attendance at supper or his or her participation in the supper prayer are 'voluntary.'"); *Jager v. Douglas Cnty Sch. Dist.*, 862 F.2d 825, 832 (11th Cir. 1989), *cert. denied*, 490 U.S. 1090 (1989) (". . . whether the complaining individual's presence was voluntary is not relevant to the Establishment Clause analysis . . . The Establishment Clause focuses on the constitutionality of the state action, not on the choices made by the complaining individual."). Public schools cannot use voluntariness to circumvent the First Amendment.

### School-sponsored Bible readings violate the First Amendment

Public schools may not provide religious instruction. In the seminal Supreme Court case on this issue, *McCollum v. Bd. of Educ.*, 333 U.S. 203 (1948), the Court held that Bible classes in public schools are unconstitutional. The school district in *McCollum* allowed religious teachers, employed by private religious groups, to teach students a regular bible class. Other federal courts have ruled that similar teaching is unconstitutional. In FFRF's lawsuit against religious instruction in Rhea County, Tennessee, the court said, "This is not a close case. Since 1948, it has been very clear that the First Amendment does not permit the State to use its public school system to 'aid any or all religious faiths or sects in the dissemination of their doctrines.'" *Doe v. Porter*, 188 F. Supp. 2d 904, 914 (E.D. Tenn 2002) (quoting *McCollum*, 333 U.S. at 211), *aff'd*, 370 F.3d 558 (6th Cir. 2004).

2

instance, the District is reportedly permitting teachers to begin their classes with a devotional reading of the Bible. Teaching public school students Bible verses in a manner similar to a Sunday school class serves no legitimate purpose other than to indoctrinate students into Christianity. This practice is plainly unconstitutional and violates the First Amendment.

The Supreme Court has recognized that "[f]amilies entrust public schools with the education of their children, but condition their trust on the understanding that the classroom will not purposely be used to advance religious views that may conflict with the private beliefs of the student and his or her family." *Edwards v. Aguillard*, 482 U.S. 578, 584 (1987). Parents, not public schools, have the constitutional right to determine their children's religious or nonreligous upbringing. The District is violating parents' right to determine which religion, if any, to raise their children to believe in.

Finally, the District's actions needlessly marginalize all students and families, such as our complainant and their child, who are nonreligious, as well as those who belong to minority faiths. Thirty-seven percent of the American population is non-Christian, including the almost 30 percent[3] who are nonreligious. At least a third of Generation Z (those born after 1996) have no religion[4], with a recent survey revealing almost half of Gen Z qualify as "nones" (religiously unaffiliated).[5]

In order to comply with the First Amendment, the District must cease permitting instructors to teach students Bible verses, and it must end its schools' practice of beginning each day with school-sponsored student-led prayers. Please respond in writing with the steps the District is taking to address this matter so that we may inform our parent-complainant. Thank you for your time and attention.

Sincerely,

*Samantha F. Lawrence*

Samantha F. Lawrence
Staff Attorney
Freedom From Religion Foundation

---

[3] Gregory A. Smith, *Religious 'Nones' in America: Who They Are and What They Believe*, Pew Research Center, Jan. 24, 2024, https://www.pewresearch.org/religion/2024/01/24/religious-nones-in-america-who-they-are-and-what-they-believe/.
[4] Samuel J. Abrams, *Perspective: Why even secular people should worry about Gen Z's lack of faith*, Deseret News (Mar. 4, 2023), www.deseret.com/2023/3/4/23617175/gen-z-faith-religious-nones-civic-life-voluntees-charity.
[5] 2022 Cooperative Election Study of 60,000 respondents, analyzed by Ryan P. Burge, www.religioninpublic.blog/2023/04/03/gen-z-and-religion-in-2022/.