UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OKLAHOMA STATE DEPARTMENT OF EDUCATION, and<br>RYAN WALTERS, in his official capacity as Superintendent of Public Instruction, and in his individual capacity,<br><br>    *Plaintiffs*,<br><br>v.<br><br>FREEDOM FROM RELIGION FOUNDATION,<br><br>    *Defendant*. | Case No. 6:25-cv-94-JFH<br><br>Hon. John F. Heil, III |

## DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT

  The Freedom From Religion Foundation ("Defendant" or "FFRF") respectfully requests that the Court dismiss the Complaint brought by the Oklahoma State Department of Education ("OSDE"), and Ryan Walters, in his official capacity as Superintendent of Public Instruction, and in his individual capacity (together, "Plaintiffs"),[1] for: (1) lack of standing under Article III of the United States Constitution; (2) failure to demonstrate subject matter jurisdiction under 28 U.S.C. 1331; (3) filing a frivolous lawsuit targeting First Amendment protected expression pursuant to the Oklahoma Citizens Participation Act ("OCPA"); and (4) failure to state a claim upon which relief can be granted as required by Fed. R. Civ. P. 8 and 12(b)(6). While dismissal is proper for all these reasons, any one is a sufficient basis on its own.

---

[1] While the Complaint lists the State of Oklahoma as a Plaintiff, neither the Summons issued by this Court nor Plaintiffs' later filings list the State of Oklahoma as a Plaintiff. *See* Docs. 2, 8, 11. For this reason, Defendant does not list the State of Oklahoma as a Plaintiff.

The Complaint centers on a simple set of allegations: a non-profit organization sent advocacy letters to government actors. Specifically, Defendant sent letters on behalf of its members to Oklahoma school districts arguing that the districts were, in Defendant's opinion, violating the U.S. Constitution and asking them to stop. *See* Doc. 2, Ex. B. Through those letters, Defendant expressed its position on a matter of public concern to government actors in the hopes of changing policy, thereby exercising its rights to speak and to petition. *See E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137 (1961) (allowing the people to freely make their wishes known to the government is an essential part of both the right to petition and the basic functioning of representative democracy); *see also Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011) (explaining the rights to free speech and petition as cognate rights essential to representative democracy). Yet, because Plaintiffs, themselves government actors, disagreed with Defendant's views, they chose to respond not by engaging with—or attempting to refute—Defendant's concerns directly, but by using taxpayer dollars to sue Defendant, in an effort to punish and suppress its constitutionally protected speech.

There is no legal basis for this lawsuit. Plaintiffs lack standing because they have failed to identify any injury caused by Defendant, much less an imminent and actual one. Plaintiffs have not met their burden to establish this Court's subject matter jurisdiction, because they have failed to clearly assert any federal claim. Indeed, Plaintiffs fail to state any claim at all because they do not articulate any specific violation of law. Moreover, because the lawsuit is premised entirely on Defendant's exercise of free speech and petition rights, amendment would be futile. Not only should Plaintiffs' Complaint be dismissed, but Defendant is also entitled to attorneys' fees and costs under the OCPA. 12 O.S. § 1438.

Read generously, Plaintiffs ask this Court to believe that Defendant's advocacy letters have so interfered with OSDE and the Superintendent's authority to govern public schools that a legal cause of action in federal court has sprung up, *see* Doc. 2 at ¶¶ 6, 8, but Plaintiffs never explain how, including under what law. Plaintiffs provide only a ramshackle set of citations to federal and state law, never articulating how any one of them creates a cause of action, much less connecting their factual allegations to any purported violation of law.

More fundamentally, Plaintiffs could never sufficiently connect these dots, because all the allegations regarding Defendant's purported misconduct describe FFRF's exercise of its First Amendment rights: sending advocacy letters on matters of public concern, including religious instruction in public schools and the presence of prayers at government meetings, to government entities, and publishing criticism of the government's actions on its website, *id.* ¶¶ 8, 31–36. The Supreme Court has long held that the law cannot be used to prohibit "the rights of association and of petition" or to stop organizations from "us[ing] the channels and procedures of state and federal agencies and courts to advocate their causes and points of view." *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972). Yet that is precisely what this lawsuit seeks to do. Adding insult to injury, Plaintiffs appear to have sued Defendant specifically because they disagree with what Defendant has to say, thereby engaging in unconstitutional viewpoint discrimination.

That Plaintiffs have targeted speech so plainly protected by the First Amendment proves that this Complaint is as dangerous as it is frivolous. If the state can weaponize the courts in service of suppressing advocacy efforts with baseless lawsuits, advocacy organizations will face an impermissible and unconstitutional choice: to speak up for what they believe in and face the possibility of time-consuming, expensive, retaliatory, and potentially ruinous lawsuits, or to self-censor and not fulfill their organizational missions. Plaintiffs' decision to file a complaint aimed

3

at suppressing speech with no basis for jurisdiction and no clear articulation of legal claims is worthy of not only dismissal but also sanctions under the OCPA.

## FACTUAL BACKGROUND

1. On March 31, 2025, Plaintiffs filed a complaint, *see* Doc. 2, alleging the following relevant facts:

2. On approximately December 17, 2024, Rick Beene, Achille Public Schools ("APS") Superintendent, received a letter from FFRF regarding "[u]nconstitutional school-sponsored prayer and bible readings." *See* Doc. 2, Ex. B. The letter summarized a report from a concerned parent about APS having "implemented a policy allowing teachers to read Bible verses at the beginning of their classes" and "a custom and practice of beginning each school day with a 'mandatory student-led prayer' over the schools' intercom." *Id.* The letter ended with a statement that "the District must cease permitting instructors to teach students Bible verses, and it must end its schools' practice of beginning each day with school-sponsored student-led prayers." *Id.* The letter made no threat of litigation, instead stating that FFRF "hope[s] to work with the District to address this issue" and asking APS to "respond in writing with the steps the District is taking to address this matter" so FFRF could update the parent who complained of the conduct. *Id.*

3. The Complaint also references a letter FFRF sent to Putnam City Schools in 2018. Doc. 2 at ¶¶ 35–36. This letter followed a complaint to FFRF from a concerned resident about a designated chaplain for the Putnam City high school football team who was reportedly proselytizing to the players and leading them in prayer. *See* Doc. 2, Ex. C. The letter expressed FFRF's position that the chaplain's conduct was a "serious and flagrant violation of the First Amendment" and ended with an "ask" to "commence an immediate investigation into this complaint" and "take appropriate action to end its chaplaincy program." *Id.*

4

4. The Complaint mentions three other FFRF actions in passing. *See* Doc. 2 at ¶ 8. In 2012, FFRF sent a letter to the Oklahoma Water Resources Board asking the Board to discontinue its practice of opening each meeting with a sectarian prayer. *Id.* In 2018, FFRF wrote the Claremore Police and Fire Departments regarding reports of city employees fundraising for the Salvation Army. *Id.* In 1996, FFRF published a letter written by the late Joann Bell, Former Executive Director of the ACLU of Oklahoma, about her experience of the Oklahoma City Bombing and its aftermath. *Id.*

## ARGUMENT

**I.    Plaintiffs' Complaint Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1).**

**A.    Plaintiffs Lack Standing.**

Article III of the U.S. Constitution limits federal court jurisdiction to genuine "cases" or "controversies," which requires that the plaintiff establish standing. U.S. Const. art. 3, § 2, cl. 1; *see e.g., Murthy v. Missouri*, 603 U.S. 43, 58 (2024). Plaintiffs bear the burden of establishing standing, *see e.g., Carney v. Adams*, 592 U.S. 53, 59 (2020), and must show "(i) that [t]he[y] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).[2]

Here, Plaintiffs fail to allege an injury in fact, the "first and foremost" of standing's three elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (internal

---

[2] Plaintiffs have cited the Declaratory Judgment Act, which has its own "controversy" requirement, but a "controversy" under the Declaratory Judgment Act is synonymous with the requirements for a "case" or "controversy" under Article III. So, it does not require a separate analysis. *See Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1241 (10th Cir. 2008).

citations omitted). To satisfy this requirement, Plaintiffs must allege (1) "an invasion of a legally protected interest" that is (2) "concrete and particularized" and (3) "actual or imminent, not conjectural or hypothetical." *Id.* at 339 (internal citations omitted). Plaintiffs' alleged injury—"interfere[nce] with" their "statutory dut[ies]" arising from school districts receiving Defendant's advocacy letters, Doc. 2 ¶ 6—cannot meet the first of these three elements, let alone all three.

Plaintiffs have not alleged, nor will they ever be able to allege, a legally protected interest in local school districts being free from public letters. Defendant's advocacy letters on a matter of public concern (religious instruction in public schools) to a government entity are protected by the First Amendment's rights of petition and free speech. *See* Doc. 2 at ¶¶ 31–36. These "cognate" rights work together to ensure the people can "express their ideas, hopes, and concerns to their government" and "foster[] the public exchange of ideas that is integral to deliberative democracy." *Guarnieri*, 564 U.S. at 388; *see also CSMN Invs., LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1282 (10th Cir. 2020) (holding the First Amendment protects "the right of the people . . . to petition the Government for a redress of grievances" and is "one of 'the most precious of the liberties safeguarded by the Bill of Rights'") (*quoting* U.S. Const., amend. 1 and *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524–25 (2002)). Sending letters to government officials is a core exercise of that right, and the government receiving such public advocacy is an essential part of our democracy. *See E. R. R. Presidents Conf.*, 365 U.S. at 137 ("In a representative democracy such as this, . . . the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives."). So, for government actors, receiving and responding to such public advocacy is part of their *job*, not an invasion of a legally protected interest.

Nevertheless, Plaintiffs seem to suggest that Defendant's protected speech somehow "interferes" with *their* duties under Oklahoma state law even though the Defendant's letters were

6

sent to local school districts, not Plaintiffs. Doc. 2 at ¶¶ 6, 8. They cite no law that makes it illegal to "interfere" with their statutory duties, much less any authority supporting the proposition that advocacy letters to the school districts could ever violate such a law. *Id.* at ¶¶ 20–24. Nor could they, for the Supreme Court has held that any cause of action that gives a party the ability to sue another for exercising its right to petition would violate the Constitution. *California Motor Transp. Co.*, 404 U.S. at 511 (reaffirming that the Sherman Anti-Trust Act does not prohibit advocacy attempting to influence government policy on trade because such a prohibition would violate the right to petition the government); *see also CSMN Invs., LLC,* 956 F.3d at 1282–90 (applying a similar theory of the right to petition outside the anti-trust context).

Here, the constitutional barriers to having a legally protected interest are even clearer. In those cases, one private party sued another because of advocacy efforts it disliked. But here, the government itself, the very entity to which members of the public have a clearly established right to petition, is attempting to claim a legally cognizable interest in being free from public advocacy. In other words, Defendant exercised its right to "petition the government for a redress of grievances," U.S. Const., amend. 1, and the government has now sued it for that.

Moreover, Plaintiffs' apparent decision to sue Defendant because they disagree with Defendant's advocacy is unconstitutional viewpoint discrimination. "The government may not discriminate against speech based on the ideas or opinions it conveys." *See, e.g., Iancu v. Brunetti*, 588 U.S. 388, 393 (2019). To the contrary, viewpoint discrimination is an "egregious form of content discrimination" that is "presumptively unconstitutional." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829–30 (1995). In short, Plaintiffs do not have and never will have a legal interest to sue under these facts because the theory at the heart of their Complaint is itself unconstitutional.

Plaintiffs' citation to *Rio Grande Found. v. Oliver* suggests an alternative theory of injury that relies on an alleged chilling effect on Plaintiffs' speech. *See* Doc. 2 at ¶ 18. To the extent that Plaintiffs are asserting this theory of injury, they have the First Amendment backward twice over: the First Amendment does not protect government speech and, far from prohibiting public criticism, it protects the political advocacy of private actors. *See, e.g., Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) ("[T]he way the First Amendment achieves its goal [of creating an expressive realm in which the public has access to a wide range of views] is by preventing *the government* from tilting public debate in a preferred direction . . . not by licensing the government to stop private actors from speaking as they wish[.]") (cleaned up and citations omitted)). That is why *Rio Grande*—and every other case that considered chilled speech as an injury for standing—centered on *government* action chilling *private* speech. *See* 57 F.4th at 1160 (assessing chilled speech of a private organization challenging New Mexico's anti-electioneering laws); *see e.g., Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 151 (2014) (assessing chilled speech of private speakers challenging an Ohio law). Plaintiffs' citation to *Rio Grande* only proves again how frivolous and dangerous this lawsuit is: Plaintiffs, in a Complaint premised entirely on targeting free speech the government dislikes, have cited to a line of cases meant to protect the public from the very type of government censorship Plaintiffs are engaging in through their action.

Since Plaintiffs do not have and never will have the legal interest necessary for standing under these facts, this Court should dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing.

**B.     Plaintiffs' Complaint Fails to Demonstrate That This Court Has Subject Matter Jurisdiction.**

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (marks and citation omitted).

Here, Plaintiffs cannot meet their "burden" of establishing that their claims meet the requirements for access to federal court. *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

To establish federal question jurisdiction, Plaintiffs must plead an affirmative cause of action that arises under federal law. "[T]he plaintiff's statement of his own cause of action [must] show[ ] that it is based upon th[e federal] laws or . . . Constitution." *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). And, for that, "it must be clear from the face of the plaintiff's complaint that there is a federal question." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012).[3] Here, Plaintiffs' disorganized and unexplained citations to both state and federal law, combined with a "Claims for Relief" section that states no cause of action, fail this requirement.

Plaintiffs cite to two sources of federal law—the Establishment and Free Exercise Clauses of the First Amendment, Doc. 2 at ¶ 20, and 20 U.S.C. § 6314, a statute that requires schools receiving federal funding to provide counseling, mental health services, and extracurricular activities, *id* at ¶ 24—but they make no effort to communicate what cause of action might flow from either. Nowhere do they directly accuse the Defendant of violating Plaintiffs' rights under the Free Exercise Clause—nor could they. The Free Exercise Clause does not protect the government from advocacy against religious practices; it protects against religious persecution at the hands of the government. *See e.g., Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 532–33 (1993) (explaining that the Free Exercise Clause is a response to religious

---

[3] To support their claim to this Court's jurisdiction, Plaintiffs cite to 28 U.S.C. §§ 1331, 2202, and 2201. *See* Doc. 2 at ¶ 17. But only 28 U.S.C. 1331 could grant this Court jurisdiction because the remaining two statutes, 28 U.S.C. §§ 2201, 2202, provide for available remedies but do not extend the federal courts' jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (explaining that 28 U.S.C. §§ 2201, 2202—the Declaratory Judgment Act—is purely remedial and does not enlarge the federal courts' jurisdiction); *see also Devon Energy Prod. Co., L.P.*, 693 F.3d at 1202.

persecution by the government and thus protects private citizens from such persecution by the state). They also fail to in any way explain how 20 U.S.C. § 6314 might somehow create a cause of action against Defendant.[4] This is far from the clarity necessary to make it "clear from the face of the . . . complaint that there is a federal question." *Devon Energy*, 693 F.3d at 1202. This Court should therefore dismiss the Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## II.     Plaintiffs' Complaint Should Be Dismissed Pursuant to OCPA.

### A.     OCPA prohibits frivolous legal actions in response to free speech.

To "safeguard the constitutional rights of persons to petition, speak freely, [and] associate freely," the Oklahoma Citizens Participation Act ("OCPA") grants defendants the ability to file a motion to dismiss "if the legal action relates to or is in response to free speech." *Anagnost v. Tomecek*, 2017 OK 7, ¶ 8, 390 P.3d 707, 709–10 (Okla. 2017) (citing 12 O.S. §§ 1430(B)) (internal citations omitted). OCPA is meant to counteract "strategic lawsuits against public participation [SLAPPs] . . . aimed at deterring public participation in decision-making forums." *Id.* at 710. To that end, the OCPA imposes a burden shifting framework, heightened pleading standards for plaintiffs, and mandatory attorneys' fees and sanctions. *See* 12 O.S. §§ 1434, 1438.

Invoking and applying OCPA involves a three-step burden-shifting framework: (1) the defendant must show that the plaintiff's claim is "based on, relates to, or is in response to the

---

[4] Plaintiffs' allegations of "interference" focus on their state law, not federal law, obligations. *See* Doc. 2 at 1 (citing to Oklahoma 70 O.S. § 1-105); *see also id.* at ¶¶ 21–23 (citing similar Oklahoma statutes regarding OSDE's authority to govern public schools). But, to the extent that their theory is that Defendant has somehow interfered with their Section 6314 obligations, that theory fails for the same reasons that Plaintiffs lack standing to assert a claim of "interference" with its state statutory obligations: Plaintiffs have not identified any law prohibiting such "interference," nor could they when it comes in the form of public advocacy letters petitioning the government for change.

[defendant's] exercise of the right of free speech, the right to petition, or the right of association;" (2) the burden then shifts to the plaintiff to show "by clear and specific evidence a prima facie case for each essential element of the claim in question"; (3) if the plaintiff succeeds, the burden shifts back to the defendant to show "by a preponderance of the evidence" a defense to the plaintiff's claims. *See* 12 O.S. §§ 1434(B)–(D); *see also Krimbill v. Talarico*, 2018 OK CIV APP 37, ¶ 9, 417 P.3d 1240, 1245 (Okla. Civ. App. 2018). If, at the second step, the plaintiff cannot demonstrate a prima facie case, OCPA requires the court to dismiss the action, provide the defendant reasonable attorneys' fees and court costs, and impose sanctions on the plaintiff. *See* 12 O.S. § 1438(A).[5]

### B.  OCPA requires dismissal, attorneys' fees and costs, and sanctions here.

Defendant satisfies OCPA's first step, which requires a defendant to "show[] by a preponderance of the evidence that the legal action is based on, relates to or is in response to the party's exercise of: 1. The right of free speech; 2. The right to petition; or 3. The right of association." 12 O.S. § 1434(B); *see also Yates v. Gannett Co.,* 2022 OK CIV APP 41, ¶ 11, 523 P.3d 69, 75 (Okla. Civ. App. 2022). Oklahoma Courts have described the OCPA as a "broad" statute, "directed at protecting a wide spectrum of First Amendment speech, with limited exceptions." *Krimbill*, 2018 OK CIV APP at ¶ 8, 417 P.3d at 1245. And any communication protected by "the right to petition government under the Constitution of the United States" falls under OCPA's protection. 12 O.S. § 1431(4)(e).

---

[5] OCPA governs state-law claims in federal court because it creates substantive rights. *See Anagnost*, 2017 OK at ¶ 17, 390 P.3d at 712 ("[T]he OCPA affects substantive rights. . . ."); *Steidley v. Cmty. Newspaper Holdings, Inc.*, 2016 OK CIV APP 63, 383 P.3d 780, 789 (Okla. Civ. App. 2016) ("[T]he addition of a new defense and mandatory attorney fees reflects a substantive change. . . .") Other Oklahoma district courts to reach the question have held that OCPA applies in federal court. *See Craig PC Sales v. CDW Government, LLC*, No. CIV-17-003-F, 2018 WL 4861522, at *11 (W.D. Okla. Apr. 30, 2018); *Terry v. Ely*, No. 19-CV-00990-PRW, 2020 WL 9074888, at *1–2, *4 (W.D. Okla. Sept. 8, 2020); *KLX Energy Services v. Magnesium Machine*, 521 F. Supp. 3d 1124, 1131 (W.D. Okla. 2021).

From advocacy letters to online statements and publications criticizing the government, the allegations purportedly showing Defendant's misconduct are all descriptions of First Amendment-protected advocacy. *See* Doc. 2 at ¶¶ 6–8, 30–36. The First Amendment was designed "to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484 (1957). It reflects a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open[.]" *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). For that reason, speech on "public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)).

This includes the focus of the Complaint: Defendant's advocacy letters to public school districts, the source of Defendant's so-called "interference" with Plaintiffs' authority to govern Oklahoma's public schools. *See* Doc. 2 at ¶¶ 6, 8. As explained above, the First Amendment protects sending public advocacy letters to government entities on matters of public concern. *See supra* at 2–3, 6–8. And Defendant's letters also fall within OCPA's specific definitions of "exercising the right of free speech," which includes a "communication made on a matter of public concern," and the right to petition, which includes a "communication that is reasonably likely to encourage consideration or review of an issue by a . . . governmental body[.]" *Id.* at §§ 1431 (3)-(7). Indeed, perhaps the only element clear from the face of the Complaint is that it is "based on" and "in response to" the Defendant's protected speech. 12 O.S. § 1434(B).

Plaintiffs cannot meet their burden of providing "clear and specific evidence [of] a prima facie case for each essential element of the claim in question." 12 O.S. § 1434(C). To do that, Plaintiffs would need to articulate what their claims and related elements are. As explained below,

12

Plaintiffs' Complaint fails to meet even the most fundamental pleading requirements of Fed. R. Civ. P. 8, let alone the OCPA's heightened prima facia case standard. Thus, this Court should dismiss Plaintiffs' Complaint pursuant to OCPA, award reasonable attorneys' fees and court costs to Defendant, and impose sanctions jointly on Plaintiffs OSDE, Ryan Walters, in his official capacity as Superintendent of Public Instruction, and Ryan Walters in his individual capacity.

### III.     Plaintiffs' Complaint Fails to State a Claim Upon Which Relief Could be Granted.

By omitting any clear statement of their legal claim for relief, Plaintiffs have failed to meet the fundamental requirements of Fed. R. Civ. P. 8. For that reason alone, this Court should dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Rule 8 requires three elements in every complaint: "(1) a short and plain statement of the grounds for the court's jurisdiction . . .; (2) *a short and plain statement of the claim showing that the pleader is entitled to relief*; and (3) a demand for the relief sought[.]" Fed. R. Civ. P. 8 (emphasis added). Most often, a complaint's ability to survive a motion to dismiss turns on whether it contains sufficient factual allegations to support its legal claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But here, Plaintiffs have failed an even more rudimentary requirement—i.e. notifying Defendant and the Court of what their legal claims actually are.

As the Supreme Court and Tenth Circuit have repeatedly clarified, Rule 8(a)(2) requires that complaints "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*citing Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). "[T]he burden rests on the plaintiffs to provide [such] fair notice," *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008), and it includes an "obligation to set forth a 'short and plain statement' showing [the plaintiff] is entitled to the relief it seeks." *Liberty Freight, LLC v. CS Fam. Trucking, Inc.*, No.

23-CV-048-JFH-MTS, 2024 WL 4906071, at *2 (N.D. Okla. Nov. 27, 2024) (citation omitted). Plaintiffs' Complaint leaves Defendant with no clarity on their claims, let alone the factual grounds upon which those hypothetical claims might rest.

As noted above, the Complaint offers up only a confusing mix of citations to the U.S. Constitution, Doc. 2 at ¶ 20; a federal statute imposing counseling, mental health service, and extracurricular obligations on federal funding recipients, *id.* at ¶ 24; and Oklahoma State Statutes defining OSDE's obligations and permitting voluntary prayer in schools, *id.* at ¶¶ 21-23. The Complaint never alleges how these laws create a cause of action, much less how they connect to the factual allegations regarding Defendant. At most, Plaintiffs allege that "FFRF has interfered with and will continue to interfere with OSDE and Superintendent Walters's statutory authority to govern Oklahoma's public schools." *Id.* at 3. Setting aside the fact that Defendant's supposed "interference" comes in the form of constitutionally protected speech, such that it could never form the basis for a claim, *see supra* at 2–3, 6, Plaintiffs also offer no explanation of how the Oklahoma statutes creating this authority provide a cause of action.[6] Similarly, Plaintiffs allude to "the weaponization" of the Establishment Clause to undermine the Free Exercise Clause, *see* Doc. 2 at 1, but they never explain how this creates a cause of action either, much less outright accuse the Defendant of such weaponization—nor could they, given that Plaintiffs are government actors and Defendant is a private advocacy organization. *See supra* at 10.

---

[6] In addition, Plaintiffs offer no source of their authority to dictate local school district policy on the subjects within the Complaint other than generalized supervision. *See* Doc 2, ¶¶ 5–6. Yet, "[Oklahoma's] school system is designed to strengthen and encourage local responsibility for control of public education, with the maximum public autonomy and responsibility remaining at the local level." *Indep. Sch. Dist. No. 12 of Oklahoma Cnty. v. State ex rel. State Bd. of Educ.*, 2024 OK 39, ¶38, 565 P.3d 23, 37 (Okla. 2024) (quoted source omitted). A general supervisory role, by itself, does not grant Plaintiffs' legal authority to strip local school districts of their statutory control over specific matters. *Id*. at ¶ 35, 565 P.3d at 36.

The Complaint concludes with a "Claims for Relief" section that, contrary to what the title might suggest, includes no legal claims. Doc. 2 at 15–16. Instead, it details forms of possible relief. "Count 1—Declaratory Relief" cites the Declaratory Judgment Act and merely states, without support, that a controversy exists. *Id.* "Count 2—Injunctive Relief" cites no law at all, instead roughly summarizing the requirements for a preliminary injunction. *Id.*

That Defendant is left to guess at what Plaintiffs' claims could be, and is unable to come to a clear answer, shows how thoroughly Plaintiffs have failed their obligation to provide Defendant with the notice required by Fed. R. Civ. P. 8. Given this failure, the Court should dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## IV.    Amendment to the Complaint Would be Futile.

As explained above, Plaintiffs' entire case is premised on an unconstitutional theory—that state actors can sue non-profit organizations for nothing more than exercising their constitutionally protected rights of free speech and petition. *See supra* at 2–3. These facts do not and *cannot* give rise to the legally protected interest required for standing, *see supra* at 6–8, or to state a claim, under federal law, *see supra* at 9–10, or otherwise, *see supra at* 13–15. Thus, Plaintiffs' Complaint is unsalvageable.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that this Court dismiss Plaintiffs' Complaint, reward reasonable attorneys' fees and court costs to Defendant, and impose sanctions on Plaintiffs under the OCPA.

Date: May 9, 2025                                        Respectfully submitted,

*/s/ Adam H. Hines*

Adam H. Hines
Oklahoma Bar Number: 35640
Megan Lambert
Oklahoma Bar Number: 33216
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF OKLAHOMA
P.O. Box 13327
Oklahoma City, OK 73113
Tel.: 405-524-8511
ahines@acluok.org
mlambert@acluok.org

Vera Eidelman*
Scarlet Kim*
Ben Wizner*
AMERICAN CIVIL LIBERTIES
 UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
veidelman@aclu.org
scarletk@aclu.org
bwizner@aclu.org

*Counsel for Defendant*

**Admitted pro hac vice*

16

## CERTIFICATE OF SERVICE

      I hereby certify that on May 9, 2025, I electronically filed the foregoing Motion to Dismiss and Brief in Support with the Clerk of Court via the Court's CM/ECF system, which effects service upon all counsel of record.

      Respectfully submitted,

      */s/ Adam H. Hines*
      Adam H. Hines
      AMERICAN CIVIL LIBERTIES UNION
        FOUNDATION OF OKLAHOMA
      P.O. Box 13327
      Oklahoma City, OK 73113
      Tel.: 405-524-8511
      ahines@acluok.org

      *Counsel for Defendant*