IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RYAN WALTERS, in his official capacity as the OKLAHOMA SUPERINTENDENT OF PUBLIC INSTRUCTION** *and* **THE OKLAHOMA DEPARTMENT OF EDUCATION,** *Plaintiffs*, -v.- **FREEDOM FROM RELIGION FOUNDATION,** *Defendant.* | Case No. 6:25cv94-JFH |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

*The Constitution and the best of our traditions counsel mutual respect and tolerance, not censorship and suppression, for religious and nonreligious views alike.*

—*Kennedy v. Bremerton School District*, 597 U.S. 507, 514 (2022).

This case presents what may be a novel issue for this Court's review. Courts typically hear First Amendment cases wherein government actors infringe upon individual citizens' free exercise rights. In this case, the duly-elected Oklahoma State Superintendent of Public Instruction and the Oklahoma State Department of Education ("OSDE") seek to champion the free exercise rights of Oklahoma's students and parents. However, the Defendants ask this Court to dismiss this action because, in their opinion, both the Superintendent and the OSDE have "failed to identify any injury" redressable in this action. ECF No. 17, p.2. In other words, the Defendants ask this Court to dismiss the Petition for the simple fact that they do not

i

believe that the Plaintiffs have any right to exercise their statutory and constitutional authority to administer the public school system.

## TABLE OF CONTENTS

TABLE OF CONTENTS………………………………………………………………….ii
TABLE OF AUTHORITES……………………………………………………………….iii
I. DISCUSSION…………………………………………………………………….1
A. The Plaintiffs have Article III standing because they have suffered an injury in fact that is redressable by this lawsuit. ...................................................................................................1
    1. OSDE has suffered a concrete injury in fact. ...............................................................2
    2. The Plaintiffs additionally have organizational standing under Article III. ....................4
        a. Individual members otherwise have standing to sue in their own right. ..................4
        b. The interests the Plaintiffs seek to protect are germane to the organization's purpose.........................................................................................................................5
        c. Neither the claim nor the relief requested requires the participation of the individual members (*i.e.*, the local school districts). ........................................................6
    3. The Plaintiffs' injuries were caused by the Defendants.......................................................6
    4. The Court has the authority to redress the Plaintiffs' injury.............................................9
B. This Court has subject matter jurisdiction over the Complaint............................................10
C. The Oklahoma Citizens Participation Act does not bar this claim. ....................................11
D. The Plaintiffs' claim is based on the Defendants' clear interference with their statutory duties, rights, and obligations under Oklahoma law; therefore, declaratory and injunctive relief is appropriate. ............................................................................................................14
II. CONCLUSION……………………………………………………………………14
CERTIFICATE OF SERVICE………………………………………………………..16

# TABLE OF AUTHORITES

**Cases**

*Barnett v. Hall, Estill, Hardwick, Gable, Golden, & Nelson, P.C.*, 956 F.3d 1228 (10th Cir. 2020) .................................................................................................................................. 11, 12

*Biden v. Nebraska*, 600 U.S. 477 (2023) ............................................................................... 1, 2, 3, 4

*Craig PC Sales & Service, LLC v. CDW Government, LLC*, No. 17cv003, 2018 WL 4861522 (W.D. Okla. Apr. 30, 2018) ..................................................................................................................13

*Freedom From Religion Foundation v. Hanover School Dist.*, 626 F.3d 1 (1st Cir. 2010) .....................5

*Freedom From Religion Foundation, Inc. v. Connellsville Area School District*, 127 F. Supp. 3d 283 (W.D. Pa. 2015) .......................................................................................................................5

*Freedom From Religion Foundation, Inc., v. Concord Community Schools*, 858 F.3d 1038 (7th Cir. 2018) ...........................................................................................................................................5

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977) ......................................4

*Kennedy v. Bremerton School District*, 597 U.S. 507 (2022)............................................................. i, 15

*Krimbill v. Talarico*, 417 P.3d 1240 (Okla. Civ. App. 2017) .............................................................12

*Plyer v. Doe*, 457 U.S. 202 (1982) ..................................................................................................11

*Students for Fair Admission, Inc. v. President & Fellows of Harvard College*, 600 U.S 181 (2023). .......4

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).............................................................................1

*Warth v. Seldin*, 442 U.S. 490 (1975).................................................................................................4

**Statutes**

12 O.S. § 1430(A) ...............................................................................................................................12

28 U.S.C. § 1331. ........................................................................................................................ 1, 10

70 O.S. § 1-105(A) ..........................................................................................................................3, 5

70 O.S. § 1-105(C) ...............................................................................................................................5

Mo. Rev. Stat. § 173.360..................................................................................................................2

**Other Authorities**

Freedom From Religion Foundation, "FFRF Legal Archives," available at: Legal — Freedom From Religion Foundation (last accessed May 19, 2025) (emphasis added)..............................7

Freedom From Religion Foundation, "FFRF Objects to Sheriff Dept.-Sponsored Prayer Breakfast featuring Justice (Elect) Gableman," Apr. 19, 2008, available at: www.ffrf.org/releases/burnettsheriff (last accessed May 23, 2025)............................................7

Freedom From Religion Foundation, "FFRF to Proselytizing Police Chief: Cease & Desist," available at: www.ffrf.org/news/releases/ffrf-to-proselytizing-police-chief-cease-and-desist/ (last accessed May 23, 2025); .................................................................................................8

Freedom From Religion Foundation, "It Pays to Complain: April 2011," available at: ffrf.org/ffrftoday/April-2011/articles-april-2011/it-pays-to-complain-april-2011 (last accessed May 23, 2025)...............................................................................................................8

Freedom From Religion Foundation, "Ryan Walters, OSDE sue nonprofit that sent cease-and desist letter over prayer in schools," available at: www.ffrf.org/news/media/media-media/ryan-walters-osde-sue-nonprofit-that-sent-cease-and-desist-letter-over-prayer-in-schools/ (last accessed May 23, 2025)..............................................................................8

Freedom From Religion Foundation, News/Media, "Ryan Walters, OSDE sue non-profit that sent cease and desist letter over prayer in school," available at: Ryan Walters, OSDE sue nonprofit that sent cease-and-desist letter over prayer in schools — Freedom From Religion Foundation (last accessed May 19, 2025) (emphasis added). ......................................................7

Germane Definition, *Black's Law Dictionary*, (12th ed. 2024), *available at* Westlaw......................5

Oklahoma State Department of Education, "Awareity," available at: Awareity Platform (last accessed May 23, 2025).................................................................................................................14

Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983).....................................................................................................................2

**Regulations**

34 C.F.R. § 300.101(a)...................................................................................................................11

**Constitutional Provisions**

Okla. Const. Art. VI, § 1(A)............................................................................................................3

Defendants Ryan Walters, in his official capacity as the State Superintendent of Public Instruction, and the Oklahoma State Department of Education ("OSDE") (hereinafter, "Plaintiffs"), respectively request that this Court DENY the Defendants' Motion to Dismiss. In support of this request, the Plaintiffs state as follows:

## I.  DISCUSSION

The Defendants' arguments in support of their motion to dismiss are wholly without merit. First, **A.** The Plaintiffs have Article III standing because they have a clear and demonstrable injury in fact which the Court can redress through its inherent equitable powers. Second, **B.** This Court has subject matter jurisdiction under the plain language of 28 U.S.C. § 1331. Third, **C.** The Plaintiffs claims do not implicate the Oklahoma Citizens Participation Act ("OCPA"). Finally, **D**. The Defendants' actions violate the Free Exercise rights of Oklahoma's students and parents. Therefore, this Court can—and should—issue an Order declaring that the Defendants have violated those rights and issue an injunction preventing them from doing the same.

### A.   The Plaintiffs have Article III standing because they have suffered an injury in fact that is redressable by this lawsuit.

The Supreme Court has long held that "[u]nder Article III of the Constitution, a plaintiff needs a 'personal stake' in the case." *Biden v. Nebraska*, 600 U.S. 477, 489 (2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). In other words, "the plaintiff must have established an injury in fact—a concrete and imminent harm to a legally protected interest[]—that is fairly traceable to the challenged conduct and likely to be redressed by the lawsuit." *Id*. As Justice Scalia eloquently explained, "[t]o demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: '"What's it to you?"' *Id*. (quoting

Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)).

To answer Justice Scalia's question, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* Although this case may present novel issues regarding a state agency's standing to sue an entity for harms that interfere with its statutory authority and duties, Supreme Court precedent provides analogous guidance. Indeed, the issues presented in *Biden* bear striking similarity to the issues presented herein. 600 U.S. 477.

### 1.    OSDE has suffered a concrete injury in fact.

In *Biden*, "[s]ix states moved for a preliminary injunction, claiming that the [student loan forgiveness] plan exceeded the Secretary [of Education's] authority." *Id.* at 488. However, "[t]he District Court held that none of the States had standing to challenge the plan and dismissed the suit." *Id.* On appeal, the United States Court of Appeals for the Eighth Circuit "concluded that Missouri likely had standing through the Missouri Higher Education (MOHELA or Authority)" and that "the State's challenge raised 'substantial' questions on the merits and that equities maintained favoring the status quo pending further review." *Id.*

In addressing the issue of standing, the Court noted that "the Secretary's plan harms MOHELA and thereby directly injures Missouri" thereby "conferring standing on that State[.]" *Id.* As the Court explained, "MOHELA is a public instrumentality of the State," having been established by statute under Mo. Rev. Stat. § 173.360. *Id.* at 490. MOHELA was created to perform an "essential public function" and "is subject to the State's supervision and

2

control." *Id.* Additionally, "its board consists of two state officials and five members appointed by the Governor and approved by the Senate." *Id.* In other words, "[b]y law and function, MOHELA is an instrumentality of Missouri: It was created by the State to further a public purpose, is governed by state officials and state appointees, reports to the State, and may be dissolved by the State." *Id.* The Court concluded that "[t]he Secretary's plan harms MOHELA in the performance of its public function and so directly harms the state that created and controls MOHELA." *Id.* at 493. Therefore, "Missouri ha[d] suffered an injury in fact sufficient to give it standing to challenge the Secretary's plan." *Id.*

The Court's description of MOHELA functions, duties, and authority strongly resembles OSDE's functions, duties, and authorities. The OSDE is also a statutorily created "public instrumentality of the State." *Id.* at 490; *See* Title 70 O.S. § 1-105(A). OSDE performs an "essential public function." *Id.* The OSDE is "placed and charged with the responsibility of determining the policies and directing the administration and supervision of the public school system of the state." Title 70 O.S. § 1-105(A). The OSDE's board consists of the Superintendent of Public Instruction who is one of only seven (7) state-wide elected officials. Okla. Const. Art. VI, § 1(A). The remaining members of the board are "members appointed by the Governor and approved by the Senate." *Biden*, 600 U.S. at 490. Therefore, "by law and function," the OSDE "is an instrumentality" of Oklahoma: "It was created by the State to further a public purpose," it "is governed by state officials and state appointees," it "reports to the State," and, theoretically, it "may be dissolved by the State." *Id.* Most importantly, actions that "harm [the OSDE] in the performance of its public function" also "directly harm[]

3

the state that created and controlled" OSDE. *Id.* at 493. Therefore, OSDE has "suffered an injury in fact sufficient to give it standing[.]" *Id.*

### 2. The Plaintiffs additionally have organizational standing under Article III.

As the Supreme Court has explained, "[i]n cases like these, where the plaintiff is an organization, the standing requirements of Article III can be satisfied in two ways." *Students for Fair Admission, Inc. v. President & Fellows of Harvard College*, 600 U.S 181, 199 (2023). In this regard, "[e]ither the organization can claim that it suffered an injury in its own right or, alternatively, it can assert 'standing solely as the representative of its members.'" *Id.* (quoting *Warth v. Seldin*, 442 U.S. 490, 511 (1975)). Applicable here, "[t]he latter approach is known as representative or organizational standing." *Id.*

In order to invoke organizational standing, "an organization must demonstrate that '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Id.* (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). We discuss these requirements in turn.

#### a. Individual members otherwise have standing to sue in their own right.

The thrust of the Plaintiffs' argument centers on "advocacy letters"—in other words, cease-and-desist demands—the Defendants routinely send to various school districts throughout Oklahoma. Theoretically, if one of these individual school districts had the time and the necessary resources, that district would have standing to raise the same claims for declaratory and injunctive relief raised here. Indeed, it is the individual districts who are the

targets of these letters; it is therefore the individual school districts who would necessarily be defendants in the further action that these Defendants often threaten. *See, e.g.*, *Freedom From Religion Foundation v. Hanover School Dist.*, 626 F.3d 1 (1st Cir. 2010); *Freedom From Religion Foundation, Inc. v. Connellsville Area School District*, 127 F. Supp. 3d 283 (W.D. Pa. 2015); *Freedom From Religion Foundation, Inc. v. New Kensington-Arnold School Dist.*, 919 F. Supp. 2d 648 (W.D. Pa. 2013); *Freedom From Religion Foundation, Inc., v. Concord Community Schools*, 858 F.3d 1038 (7th Cir. 2018).

### b. The interests the Plaintiffs seek to protect are germane to the organization's purpose.

The "members" of the organization in this case are the local elementary (dependent) and independent school districts in the State of Oklahoma. These districts clearly have an interest in the day-to-day operation and function of their individual schools. The Superintendent "is the official provided for in Section I of Article VI of the Oklahoma Constitution who shall [] have control of and direct the State Department of Education." Title 70 O.S. § 1-105(C). The OSDE "is that department of the state government in which the agencies created or authorized by the Constitution and Legislature are placed and charged with the responsibility of determining the policies and directing the administration and supervision of the public school system of the state." *Id.* at § 1-105(A).

*Black's Law Dictionary* defines the word germane to mean "relevant" or "pertinent." Germane Definition, *Black's Law Dictionary*, (12th ed. 2024), *available at* Westlaw. Given that the OSDE is statutorily charged with "the responsibility of determining the policies and directing the administration and supervision of the public school system," and that the Superintendent "ha[s] control of and direct[s] the State Department of Education," the

5

interests of the local schools districts are certainly germane to the Superintendent's and the OSDE's mission.

### c.  Neither the claim nor the relief requested requires the participation of the individual members (*i.e.*, the local school districts).

The Plaintiffs seek a declaration stating that FFRF's letters violate the free exercise clause of Oklahoma's public school students. The Plaintiffs seek a declaration stating that interfering with the operation and administration of Oklahoma public schools harms the Plaintiffs by frustrating their statutory duties to direct and administer the State's public schools, and the Superintendent's constitutional and statutory duties to control and direct the OSDE.

The Plaintiffs also seek an injunction enjoining the Defendants from sending cease-and-desist letters to local school districts. Once again, the Plaintiffs are **not** asking that the Court issue an injunction prohibiting the Defendants from engaging in "advocacy." The Plaintiffs are simply asking that the Court enjoin the Defendants from threatening local school districts with legal action relating to their own policies and procedures where those policies and procedures not statutorily prohibited by Oklahoma law, and comport with the OSDE's policies governing the public schools.

Given these facts, the relief requested may be granted absent the participation of individual members, aside from any possible witness and/or deposition testimony. Therefore, the individual school districts would certainly be affected by any relief granted, but the participation of individual members is not necessary in this action.

### 3.  The Plaintiffs' injuries were caused by the Defendants.

As a threshold matter, the Plaintiffs have not argued, and do not now argue, that there is "a legally protected interest in local school districts being free from public letters." ECF No.

6

17, p.6. Nor do the Plaintiffs "attempt[] to claim a legally cognizable interest in being free from public advocacy." *Id.* at p.7. The word "advocacy" is important here. Regardless of what the Defendants call them, the letters the Defendants routinely send to Oklahoma's local school districts are *not* benign "advocacy letters."

FFRF may call these letters by any name it chooses, but that does not alter the fact that they are cease and desist letters with thinly veiled threats of legal action for noncompliance. The letters are called "*legal* complaint letters" on FFRF's website.[1] FFRF plainly and unambiguously states that they will "go to court as necessary" when their "efforts fail."[2] FFRF's website contains a link to local news station KOCO News 5 in Oklahoma City's story entitled "Ryan Walters, OSDE sue non-profit that sent **cease and desist letter** over prayer in school."[3]

Indeed, it is difficult, if not impossible, to find a single recipient of one of these so-called "advocacy letters" that views it as anything other than a cease-and-desist letter. Indeed, FFRF's own website uses the term cease-and-desist interchangeably with other language including but not limited to "advocacy letter," "letter of objection," and "letter of complaint.[4]

---

[1]     Freedom From Religion Foundation, "FFRF Legal Archives," available at: Legal — Freedom From Religion Foundation (last accessed May 19, 2025) (emphasis added).

[2]     *Id.*

[3]     Freedom From Religion Foundation, News/Media, "Ryan Walters, OSDE sue non-profit that sent cease and desist letter over prayer in school," available at: Ryan Walters, OSDE sue nonprofit that sent cease-and-desist letter over prayer in schools — Freedom From Religion Foundation (last accessed May 19, 2025) (emphasis added).

[4]     *See, e.g.*, Freedom From Religion Foundation, "FFRF Objects to Sheriff Dept.-Sponsored Prayer Breakfast featuring Justice (Elect) Gableman," Apr. 19, 2008, available at: www.ffrf.org/releases/burnettsheriff (last accessed May 23, 2025) (stating initially that "[a]

7

What this shows is that FFRF routinely sends letters which threaten or, at the very least, are intended to appear to threaten, the recipients with legal action, should the recipient fail to comply with the demands in the letter. In turn, the recipient school districts often turn to the OSDE for guidance. That makes sense. The recipient school districts are often torn between facing legal action which has the potential to be lengthy and costly, or complying with the demands at the risk of potentially violating OSDE policies and state statutes. In essence, recipient school districts face a Catch-22: comply and face possible repercussions from the State Agency which governs them, or not comply and face legal action brought by a massive, national organization that has endless staff, resources, time, and money where the districts themselves are often poor, rural districts with very little available resources.

The Superintendent holds a constitutionally created, executive-level position. He has sworn an oath to uphold the Constitution of the State of Oklahoma. The OSDE is statutorily required to create, oversee, and implement the policies of the Oklahoma's public schools. When school districts are accused of violating either the Oklahoma Constitution or the policies and procedures implemented by the OSDE, it is the OSDE's responsibility to address those accusations, make findings of fact and conclusions of law, and implement any necessary

---

Wisconsin county sheriff has been asked to cease and desist" but subsequently referring to a "letter of objection" sent by FFRF co-president); Freedom From Religion Foundation, "Ryan Walters, OSDE sue nonprofit that sent cease-and desist letter over prayer in schools," available at: www.ffrf.org/news/media/media-media/ryan-walters-osde-sue-nonprofit-that-sent-cease-and-desist-letter-over-prayer-in-schools/ (last accessed May 23, 2025); Freedom From Religion Foundation, "FFRF to Proselytizing Police Chief: Cease & Desist," available at: www.ffrf.org/news/releases/ffrf-to-proselytizing-police-chief-cease-and-desist/ (last accessed May 23, 2025); Freedom From Religion Foundation, "It Pays to Complain: April 2011," available at: ffrf.org/ffrftoday/April-2011/articles-april-2011/it-pays-to-complain-april-2011 (last accessed May 23, 2025).

corrective measures. When FFRF sends cease-and-desist demands to local schools, it is circumventing the policies and procedures the OSDE has implemented for addressing parent and/or student complaints. When FFRF takes legal action against a local school district for adhering to policies the OSDE created, the OSDE has a responsibility to that school to zealously advocate for it as a parent would for a child.

In short, FFRF's actions harm the Superintendent and the OSDE by interrupting and interfering with their obligations to administer the public school system of the State of Oklahoma. The Superintendent and the OSDE cannot be expected to tell local school districts to "fend for themselves" when faces with threats of legal action. Indeed, their duties to Oklahoma's parents and students demand that they do no such thing. Each time a district receives a cease-and-desist demand from FFRF, OSDE must expend valuable time and resources to address it. Therefore, the Defendants' actions harm the Superintendent and the OSDE in the same manner they harm the individual schools.

    **4.    The Court has the authority to redress the Plaintiffs' injury.**

The Plaintiffs seek a declaration from this Court that the Defendants' actions—meaning, continuously sending cease-and-desist demands (by any name they choose to use) to local school districts—constitute an unlawful interference with the Plaintiffs' constitutional and statutory rights and duties to administer the public school system. The Plaintiffs further seek an injunction prohibiting the Defendants from continuing this practice.

As discussed in more detail in Part B, *infra*, the Plaintiffs' claims arise under both federal and state constitutional laws. More specifically, the Plaintiffs claim that the Defendants are violating the free exercise rights of Oklahoma's students and their families through harassment

9

tactics and threats of litigation. Individual school districts are often not equipped, either in staffing or other necessary resources, to defend claims levied against them through the court system. Therefore, and more often that not, these districts feel as though they have no other choice but to comply with the Defendants' demands. In doing so, those school districts are placed in the unenviable position of limiting some students' First Amendment rights in favor of others. This Court has the authority to enter declaratory judgment on whether or not the Defendants' actions unlawfully manipulate the First Amendment to push their own agenda. This Court has the authority to enter declaratory judgment on whether or not the Defendants' continued interference with the day-to-day operations, including without limitation instruction and instructional materials, of Oklahoma's public schools unlawfully interferes with the Plaintiffs' constitutional and statutory rights and authority under Oklahoma laws, the Oklahoma Constitution, and the United States Constitution. Finally, should the Court agree with the Plaintiffs, the Court has the authority to issue an injunction prohibiting the Defendants from sending cease-and-desist demands (by that name or any other) to Oklahoma's public schools.

### B.   This Court has subject matter jurisdiction over the Complaint.

It is unclear why the Defendants believe this Court does not have subject matter jurisdiction pursuant to 28 U.S.C. § 1331. That statute provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The Plaintiffs' claim is brought pursuant to the Free Exercise Clause of the First Amendment. That is clearly a "civil action[] arising under the Constitution [] of the United States." *Id.*

Furthermore, the Plaintiffs are statutorily required by both federal and state constitutional law to provide a free and appropriate education for all students. *See Plyer v. Doe*, 457 U.S. 202 (1982); 34 C.F.R. § 300.101(a); *See generally*, Title 70 O.S. The Plaintiffs' claims center on their ability to fulfill this mandate. Particularly relevant here, the Plaintiffs' claims center on what an "appropriate" education means. If a local school district is *not* providing an appropriate education, that is potentially a violation of federal, state, and constitutional laws.

The Defendants' cease-and-desist demands indicate that Oklahoma's local schools are violating the Establishment Clause of the First Amendment. That is a federal question. By contrast, the Plaintiffs believe that the Defendants are violating Oklahomans' right to free exercise under the First Amendment. That is also a federal question. The cease-and-desist letters also call into question whether or not the Plaintiffs are providing appropriate education. That implicates whether or not the Plaintiffs are complying with the Code of Federal Regulations, Supreme Court precedent, and Oklahoma law. Therefore, there is jurisdiction under the Court's original federal question jurisdiction.

### C. The Oklahoma Citizens Participation Act does not bar this claim.

As a threshold matter, it is not fully settled law in the Tenth Circuit that the Oklahoma Citizens Participation Act ("OCPA" or "Act") even applies in federal court cases. *See Barnett v. Hall, Estill, Hardwick, Gable, Golden, & Nelson, P.C.*, 956 F.3d 1228, 1239 (10th Cir. 2020) (noting that "the federal-law issue of whether to apply anti-SLAAP statutes like the OCPA in federal court is a challenging one and has divided the circuits. It makes sense to wait to decide the issue until we must do so, perhaps after helpful development of both federal law and Oklahoma case law interpreting the statute.")

Nevertheless, assuming *arguendo* and without conceding that the OCPA applies, that statute exists "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely and otherwise participate in government to the maximum extent permitted by law[.]" Title 12 O.S. § 1430(A). The Act further provides that it strives to "protect the rights of a person to file meritorious lawsuits for demonstrable injury." *Id.* What the Act does *not* do is give *carte blanche* license to anyone who feels even slightly offended to inundate local school districts with cease-and-desist demands and threats of legal action for perceived violations of rights.

As the Tenth Circuit explained, "Anti-SLAAP legislation appears to be the result of an increasing tendency by parties with substantial resources to file meritless lawsuits against legitimate critics, with the intent to silence those critics by burdening them with the time, stress, and cost of legal action." *Barnett*, 956 F.3d at 1233 (quoting *Krimbill v. Talarico*, 417 P.3d 1240, 1245 (Okla. Civ. App. 2017) (internal quotation marks omitted). Ironically, that description bears striking similarity to the actions the Defendants themselves take. After all, they are a party "with substantial resources" which "intend[s] to silence" others "by burdening them with the time, stress, and cost of legal action." *Id.*

If the OCPA applies, "the Plaintiff must show by 'clear and specific evidence a prima facie case for each essential element' of the claim." *Id.* at 1234 (quoting *Krimball*, 417 P.3d at 1245). "If the plaintiff carries that burden, the defendant can avoid further proceedings by proving 'by a preponderance of the evidence' a valid defense to the plaintiff's claims." *Id.* (quoting *id.*)

12

Here, the Plaintiffs have met their burden. The Plaintiffs have shown that Defendants have threatened and will continue to threaten the free exercise rights exercise rights of Oklahoma's students and parents. By doing so, the Defendants have interfered with and will continue to interfere with the Plaintiffs' constitutional and statutory duties to ensure that Oklahoma's students and parents are able to have access to a free and *appropriate* education. However, if the Court disagrees, the Plaintiffs' respectfully request that this Court "allow specified and limited discovery relevant to the [Defendants'] motion." *Craig PC Sales & Service, LLC v. CDW Government, LLC*, No. 17cv003, 2018 WL 4861522, at *16 (W.D. Okla. Apr. 30, 2018). Doing so will "afford the plaintiffs an opportunity to present supporting affidavits relevant to the issues stated below or to conduct limited discovery relevant to those issues." *Id.*

The Plaintiffs have not violated the Defendants' right to free speech. The Plaintiffs in this case are not seeking to "silence" the Freedom From Religion Foundation or any of its partners or affiliates. The Defendants are free to shout their opinions and ideas from the mountaintops. They are free to send out their newsletters, speak to the media, or take any other actions they desire to disseminate their messages. They are free to exercise their free speech rights unfettered and unencumbered. They may even send their cease-and-desist letters directly to the OSDE. After all, if a school district is violating any policy, it is the OSDE's duty to address those claims.[5] Therefore, the Defendants' claim that the Plaintiffs have violated the OCPA is without merit.

---

[5]     In fact, OSDE has an open platform by which parents and/or students may submit concerns online and in an anonymous matter. The Awareity Reporting System "provides a quick and convenient way to report a wide range of concerns" "related to providing a safe,

13

**D.    The Plaintiffs' claim is based on the Defendants' clear interference with their statutory duties, rights, and obligations under Oklahoma law; therefore, declaratory and injunctive relief is appropriate.**

As discussed in Part A(2), *supra*, the Plaintiffs in this case are charged with "the responsibility of determining the policies and directing the administration and supervision of the public school system of the state." Title 70 O.S. § 1-105(A). The Plaintiffs are also charged with addressing complaints levied at school districts, their faculty, or staff. Most importantly, the Plaintiffs have a duty to ensure that the Free Exercise rights of Oklahoma's students and parents are not infringed upon.

The Plaintiffs seek a declaration from this Court that the endless stream of cease-and-desist letters it routinely sends to Oklahoma public schools interferes with the Superintendent's and the OSDE's constitutional and statutory duties. The Plaintiffs further seek an injunction prohibiting the Defendants from continuing to threaten Oklahoma's public schools with legal action for noncompliance with its demands. Therefore, this Court has the authority to issue an granting both declaratory and injunctive relief prohibiting the Defendants from issuing cease-and-desist letters for alleged constitutional violations to Oklahoma public schools.

## II.    CONCLUSION

The Free Exercise Clause "does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through

---

secure, and healthy school environment." Relevant here, these reports may be submitted regarding "civil rights," "curriculum and instruction," "legal concerns," and "professional standards/educator conduct[.]" Oklahoma State Department of Education, "Awareity," available at: [Awareity Platform](#) (last accessed May 23, 2025).

14

the performance of (or abstention from) physical acts." *Kennedy*, 597 U.S. at 525 (internal quotation and citations omitted).

The Plaintiffs are cognizant of the Defendants' free speech rights. Freedom of speech and expression is perhaps the most fundamental right the Constitution guarantees. That is why the Plaintiffs do not and have not demanded that the Defendants cease from advocating for whatever their deeply held beliefs may be. However, sending school districts demands with threats of legal action for noncompliance chills the very freedoms the Defendants claim to champion.

For these reasons, the Plaintiffs respectfully request that the Court DENY the Defendants' Motion to Dismiss. In the alternative, the Plaintiffs respectfully request that this Court order limited and specific discovery, thereby affording the Plaintiffs the opportunity to fully show their prima facie case by clear and specific evidence.

Respectfully Submitted,

/s/ *Jacquelyne K. Phelps*
Jacquelyne K. Phelps
Oklahoma Bar No. 34366
Assistant General Counsel
Oklahoma State Department of Education
2500 N. Lincoln Blvd. Ste. 500
Oklahoma City, OK 73105
Tel: 405-521-2983
Email: Jacki.Phelps@sde.ok.gov

*Counsel for Plaintiffs Superintendent Walters & the Oklahoma State Department of Education*

**CERTIFICATE OF SERVICE**

The undersigned, Jacquelyne Phelps, an attorney with the Oklahoma State Department of Education, hereby certifies that on May 23, 2025, I filed the foregoing with the Clerk of the Court using the CM/ECF System.

/s/Jacquelyne K. Phelps
JACQUELYNE K. PHELPS
Oklahoma Bar No. 34366
Assistant General Counsel
Oklahoma State Department of Education
2500 N. Lincoln Blvd. Ste. 500
Oklahoma City, OK 73105
Tel: 405-521-2983
Email: Jacki.Phelps@sde.ok.gov

*Counsel for Plaintiffs Superintendent Walters & OSDE*