UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OKLAHOMA STATE DEPARTMENT OF EDUCATION, and<br>RYAN WALTERS, in his official capacity as Superintendent of Public Instruction, and in his individual capacity,<br><br>　　　　　　　　*Plaintiffs*,<br><br>　　　v.<br><br>FREEDOM FROM RELIGION FOUNDATION,<br><br>　　　　　　　　*Defendant*. | Case No. 6:25-cv-94-JFH<br><br>Hon. John F. Heil, III |

**<u>REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>**

Defendant argued in its opening brief that this case should be dismissed with prejudice for four reasons. Plaintiffs' Response fails to address, much less refute, these arguments.

First, Plaintiffs have not established standing, as they have not pointed to any actual injury in fact arising from an organization of private citizens sending advocacy letters to government agencies. Nor could they, because no legally cognizable injury can result from that protected activity. To hold otherwise would unconstitutionally restrict Defendant's First Amendment right to petition the government. Second, Plaintiffs neither have presented, nor could present, a federal question necessary for subject matter jurisdiction. No such claim is articulated in their Complaint, and no federal claim exists for Plaintiffs' alleged facts. Third, Plaintiffs assert that their unarticulated claims meet the heightened standard of the Oklahoma Citizens Participation Act ("OCPA"), but they fail to explain how—and, adding insult to injury, they now request discovery, which would only serve to contravene the very purpose of the OCPA and unnecessarily burden

1

Defendant. Lastly, Plaintiffs utterly fail to respond to Defendant's Fed. R. Civ. P. 12(b)(6) arguments, which focus on the fatal lack of clarity in their claims and are a sufficient basis on their own to grant Defendant's motion. Notwithstanding the myriad pleading deficiencies of the Complaint, no amendment can solve the fundamental problem with Plaintiffs' legal theory and establish Plaintiffs' standing. The case should be dismissed with prejudice.

### I. Plaintiffs lack the requisite injury in fact to establish standing.

Plaintiffs have suffered no concrete injury and therefore can access no judicial remedy. The unique state-standing doctrines discussed in *Biden v. Nebraska* and the rules of organizational standing cannot solve this terminal flaw. *See* Pls.' Resp., Doc. 24 at 1-6. Regardless of whose interests Plaintiffs claim to be representing—the State of Oklahoma, independent school districts, or students—the crux of the problem remains that Plaintiffs must prove that Defendant's advocacy letters created an injury in fact. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (labeling the injury in fact as the "first and foremost" of standing's three elements (cleaned up)). They cannot do so.

Plaintiffs primarily rely on *Biden v. Nebraska*, 600 U.S. 477 (2023) in an attempt to show a concrete injury. *See* Doc. 24 at 1–3. Plaintiffs loosely cite the case—a challenge brought by six states to the Secretary of Education's cancellation of billions of dollars in federal loans—for the proposition that "harm [to an instrumentality of the state] in the performance of its public function" is enough to establish injury. *Id.* at 3. But that elides the very concrete "harm" at issue in *Biden*: a loss of $44 million a year in revenue to the nonprofit the state had established to join the market for student loans. That "[t]his financial harm is an injury in fact" was so evident that "both the Government and the dissent concede[d it]." 600 U.S. at 490. The core standing question in the case was thus not whether, as here, some undefined harm arising from nebulous "interference" could

2

establish standing, but whether states were the proper plaintiffs to sue over such a concrete harm to their instrumentalities. Here, Defendant is not arguing about who the right party is to bring this suit but rather asserting that there is no injury in fact at all.

An injury sufficient for Article III standing must be: (1) "an invasion of a legally protected interest" that is (2) "concrete and particularized" and (3) "actual or imminent[.]" *Spokeo, Inc.*, 578 U.S. at 339 (citation omitted). Instead of engaging with these requirements, Plaintiffs simply insist that Defendant's letters (1) injured the free exercise rights of students and parents, and (2) interfered with OSDE's statutory duties under Oklahoma law to administer the public school system. *See* Doc. 24 at 6-8, 14. Setting aside key questions about whether Plaintiffs have third-party standing to sue on behalf of students and whether school districts are even the kinds of members necessary to establish associational standing, subjecting these theories of injury to the actual legal standard for injury-in-fact reveals their obvious deficiencies.

Start with the Free Exercise Clause theory. The clause protects against religious discrimination at the hands of the *government*; it does not protect the government from public advocacy about what citizens believe the government should do. *See e.g.*, *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532–33 (1993). In fact, the First Amendment's protection of the rights to free speech and petition make such an argument nonsensical. *See* Def.'s Mot. Dismiss, Doc. 17 at 6-7. The public has a constitutional right to petition state actors for changes in policy, and those state actors have a responsibility to listen, not sue organizations of private citizens for their advocacy. *See e.g., Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011); *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524–25 (2002); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972).

Plaintiffs' theory that Defendant's letters cause injury by interfering with Plaintiffs' administrative duties likewise has no legal support. While Plaintiffs cite many times to the Oklahoma statutes assigning them administrative duties, they never cite to any legal authority that suggests these statutes create a legal interest in being free from any "interference" with these duties, let alone define what such interference must involve, or how public advocacy letters could possibly qualify. *See generally* Compl., Doc. 2; Doc. 24.

The lack of any legally cognizable interest alone proves Plaintiffs lack standing. The final two necessary elements for an injury in fact only reinforce that conclusion.

To satisfy standing, an injury must also be "concrete and particularized," meaning it must "actually exist." *Spokeo*, 578 U.S. at 339-40. Yet Plaintiffs have offered no allegations to show that here. Even if Plaintiffs' theories of injury were somehow legally cognizable, Plaintiffs *never* allege that any school district took any action or refrained from any action—including, specifically, one that somehow limited a student's free exercise rights or interfered with the district's, OSDE's, or Walters' duties—as a result of Defendant's letters. *See generally* Doc. 2. Indeed, Plaintiffs admit that, had Defendant sent its letters to OSDE directly, there would have been no injury at all. Doc. 24 at 13. So, in essence, the purported problem here amounts to no more than sending advocacy letters to the wrong address.

Nor have Plaintiffs offered proof of any "imminent" injuries that could satisfy the third requirement for an injury in fact. *See e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Plaintiffs argue that Defendant's letters carried an implicit threat of litigation, Doc. 24 at 6–7, but the challenged advocacy letters belie that claim because neither letter makes threats of future action of any kind toward Plaintiffs. *See* Doc. 2, Ex. B and C. To the contrary, one letter expresses a "hope to work with the District" and explains that it would like to know how and whether the

District responds in order to "inform our parent-complainant," not file suit. Doc. 2, Ex. B at 2, 4. The other letter—which is seven years old and therefore incapable of threatening any "imminent" action regardless of what it says—merely "ask[s]" the District to take steps to remedy what Defendant sees as a constitutional violation and requests that the District "inform us in writing" of the steps it does take, but nowhere mentions the possibility of litigation. Doc. 2, Ex. C at 3.[1]

In the end, nothing can overcome the fundamental flaw in Plaintiffs' legal theory. Even if Plaintiffs had properly styled their Complaint as seeking declaratory judgment in response to concrete, imminent threats of litigation—which they have not—*and* even if the text of the letters supported this theory—which it does not—neither the Free Exercise Clause, nor the various state and federal statutes Plaintiffs cite, could create a legal interest for government actors in being free from receiving such letters. *See* Doc. 17 at 6-7; *see also Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1244–46 (10th Cir. 2008) (explaining the fact-intensive injury in fact analysis necessary for declaratory judgment actions between private parties). To hold otherwise would run afoul of the First Amendment's rights to free speech and petition. Thus, the Court should dismiss Plaintiffs' Complaint with prejudice on standing grounds alone.

## II.     The Complaint fails to establish this Court's subject matter jurisdiction.

While recognizing that the Complaint cites to two sources of federal law—the First Amendment's Establishment and Free Exercise Clauses, and a federal law requiring schools that receive federal funding to provide certain resources to students—Defendant moved to dismiss for

---

[1] Plaintiffs attempt to bolster their characterization of the advocacy as "cease and desist letters" by citing to various materials on FFRF's website. *See* Doc. 24 at 7–8. Because none of the materials are included in the Complaint, they are not proper to consider on a Motion to Dismiss. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). More fundamentally, they fail to support Plaintiffs' claims because the vast majority are not specific to any communications with or about Plaintiffs, and the one that mentions Walters and OSDE, Doc. 24 at 7 n.3, is a link to an external news article characterizing Defendant's work.

5

lack of federal court subject matter jurisdiction because Plaintiffs made no effort in the Complaint to explain what cause of action flows from either. Doc. 17 at 8–10. In response, Plaintiffs now state that their claim arises "pursuant to the Free Exercise Clause of the First Amendment," Doc. 24 at 10, but they still fail to connect the dots between the existence of that clause and the presence of any claim in their Complaint.[2] More fundamentally, no such free exercise claim exists in the law. As Defendant explained above and in its Motion to Dismiss, the Free Exercise Clause does not protect the government from advocacy against religious practices; it protects against religious persecution at the hands of the government. *See* Doc. 17 at 9-10; *supra* at 3.[3]

Plaintiffs' second argument is that their claim arises under federal law because they are required by federal law to provide an appropriate education to all students. Doc. 24 at 11. Again, such a claim appears nowhere on the face of their Complaint, as required by the well-pleaded complaint rule, nor is it clear how that federal statute gives rise to a claim in this case. Rather than address this deficiency, Plaintiffs' Response vaguely suggests that they are defending the "appropriate" education federal law requires and cite, with no context, to *Plyler v. Doe*, an equal protection case that has nothing to do with subject matter jurisdiction. 457 U.S. 202 (1982); Doc. 24 at 11. This does not suffice to establish the Court's subject matter jurisdiction.

---

[2] Plaintiffs' conclusory allegation here does not cure this deficiency, and no such statement appears in Plaintiffs' Complaint, as required by the well-pleaded complaint rule, *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012). A statement in response to a motion to dismiss cannot cure that deficiency. *See Bekkem v. McDonough*, No. CIV-22-907-R, 2023 WL 3903920, at *2 (W.D. Okla. June 8, 2023) ("[A] plaintiff may not amend her complaint via a response brief.") (citing *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020)).
[3] Plaintiffs also suggest that Defendant's letters concerning the Establishment Clause create the federal question necessary for subject matter jurisdiction. Doc. 24 at 11. But, as noted above, Plaintiffs lack standing to raise an establishment clause claim and, even if they didn't, no such claim could exist on the basis of the allegations in their Complaint. *See supra* at 5.

**III.     The OCPA applies in federal court, and it does not give Plaintiffs any access to discovery here.**

    **A.     OCPA applies and requires dismissal, costs, and sanctions.**

Though Plaintiffs are correct that the Tenth Circuit has not yet ruled on whether the OCPA applies in federal court, *see Barnett v. Hall, Estill, Hardwick, Gable, Golden, & Nelson, P.C.*, 956 F.3d 1228, 1239 (10th Cir. 2020), Oklahoma federal district courts have consistently held that the OCPA must be applied when federal courts hear state law claims. *See Craig PC Sales & Serv., LLC v. CDW Gov't, LLC*, No. CIV-17-003-F, 2018 WL 4861522, at *11 (W.D. Okla. Apr. 30, 2018); *Terry v. Ely*, No. 19-CV-00990-PRW, 2020 WL 9074888, at *1–2, *4 (W.D. Okla. Sept. 8, 2020); *KLX Energy Servs., LLC v. Magnesium Mach., LLC*, 521 F. Supp. 3d 1124, 1131 (W.D. Okla. 2021) (applying the OCPA after the Tenth Circuit's *Barnett* opinion).

This outcome is necessary because, as explained by the Oklahoma Supreme Court, the OCPA's provisions are so robust that they "affect[ ] substantive rights." *Anagnost v. Tomecek*, 2017 OK 7, ¶ 17, 390 P.3d 707, 712 (Okla. 2017). If the federal courts were not to apply the OCPA, they would therefore run afoul of the Rules Enabling Act, which prohibits applying federal rules in place of state law if the federal rule would "abridge" or "modify any substantive right[s]." 28 U.S.C. § 2072(b).

Other than cursorily arguing that the OCPA should not apply in federal court, Plaintiffs fail to argue that it does not apply to their claims. Instead, they offer nothing more than the conclusory assertion that they have met the OCPA's heightened standard at this stage, without any citation to or support in the Complaint.

    **B.     Limited discovery is not warranted.**

Only exacerbating the SLAPP nature of this suit, Plaintiffs hedge with a request for limited discovery under the OCPA to help them gather the evidence they supposedly need to make a prima

7

facie case for their purported claims. Doc. 24 at 13. This request should be denied because it defeats the very purpose of the OCPA without providing any practical benefit to Plaintiffs.[4]

The OCPA exists to protect defendants attacked for their speech from the "the time, stress, and cost of a legal action." *Krimbill v. Talarico*, 2018 OK CIV APP 37, ¶ 7, 417 P.3d 1240, 1245 (Okla Civ. App 2017). That is why the OCPA automatically stays all discovery once a party files a motion to dismiss under it. 12 O.S. § 1432(c). The OCPA does empower a court to grant limited discovery, but only when "relevant to the motion to dismiss," *see* 12 O.S. § 1435(B), in order to protect meritorious plaintiffs with fact-intensive claims from undue dismissal. *See Craig PC Sales*, 2018 WL 4861522, at *16 (allowing the plaintiff limited discovery on fact-intensive tort claims with clear elements that turned on tricky factual questions such as the defendant's state of mind).

Limited discovery does not and cannot extend to plaintiffs, like those here, whose claims fail as a matter of law even when assuming the alleged facts are true. *See Sackler v. Am. Broad. Companies, Inc.*, 144 N.Y.S.3d 529, 535 (Sup. Ct., N.Y. Cnty. 2021) (denying limited discovery to plaintiffs under a similar anti-SLAPP law whose claims fail as a matter of law). As an initial matter, it is hard to imagine what discovery could benefit plaintiffs in this scenario, nor do Plaintiffs offer any clues. *See* Doc. 24 at 13. Setting aside the point that no new allegations could establish a claim here given the core defect in Plaintiffs' theories, *see supra* at 3–5, all of the facts that could conceivably be relevant—for example, evidence of actual interference—are in Plaintiffs', not Defendant's, possession. Moreover, to allow discovery here would not only put a frivolous action against the exercise of free speech rights back on life support, but it would also

---

[4] In addition, Plaintiffs' motion for limited discovery in their response brief violates this Court's local rules and should be disregarded on that basis alone. *See* LCvR 7.1(d).

enable plaintiffs who bring such actions a fast-track to burdening defendants with discovery, thereby entirely contravening the purpose of the anti-SLAPP law.

**IV.     Plaintiffs offer no response to Defendant's 12(b)(6) arguments.**

As Defendant explained in its Motion to Dismiss, the Complaint fails even the most rudimentary requirements of Fed. R. Civ. P. 8—i.e. notice of what Plaintiffs' claims actually are. *See* Doc. 17 at 13-15. In a seeming admission on this point, Plaintiffs make no attempt to argue that their Complaint meets these requirements, the necessary point for any party hoping to overcome a 12(b)(6) motion. *See generally* Doc. 24; *see also supra* at 6, n.2. That alone suffices to dismiss this case.

## CONCLUSION

No amendment can save a complaint devoid of standing, subject matter jurisdiction, or even a clear articulation of legal claims and elements. Moreover, no amendment can save a complaint premised on the unconstitutional theory that a government entity can suffer a legally cognizable harm from First Amendment-protected advocacy by public interest organizations. Defendant therefore respectfully requests that this Court dismiss the Complaint with prejudice, impose sanctions on Plaintiffs under the OCPA, and determine that Defendant is entitled to an award of reasonable attorneys' fees and court costs under the OCPA.

Date: June 13, 2025                                    Respectfully submitted,

*/s/ Adam H. Hines*

Adam H. Hines
Oklahoma Bar Number: 35640
Megan Lambert
Oklahoma Bar Number: 33216
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF OKLAHOMA

P.O. Box 13327
Oklahoma City, OK 73113
Tel.: 405-524-8511
ahines@acluok.org
mlambert@acluok.org

Vera Eidelman*
Scarlet Kim*
Ben Wizner*
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
veidelman@aclu.org
scarletk@aclu.org
bwizner@aclu.org

*Counsel for Defendant*

*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

    I hereby certify that on June 13, 2025, I electronically filed the foregoing Reply Brief in Support of Defendant's Motion to Dismiss with the Clerk of Court via the Court's CM/ECF system, which effects service upon all counsel of record.

                                          Respectfully submitted,

                                          */s/ Adam H. Hines*
                                          Adam H. Hines
                                          AMERICAN CIVIL LIBERTIES UNION
                                            FOUNDATION OF OKLAHOMA
                                          P.O. Box 13327
                                          Oklahoma City, OK 73113
                                          Tel.: 405-524-8511
                                          ahines@acluok.org

                                          *Counsel for Defendant*