IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **OKLAHOMA STATE DEPARTMENT OF EDUCATION and RYAN WALTERS,** in his official capacity as Superintendent of Public Instruction, and in his individual capacity,<br><br>       **Plaintiffs,**<br><br>v.<br><br>**FREEDOM FROM RELIGION FOUNDATION,**<br><br>       **Defendant.** | Case No. 25-CV-094-JFH |

## OPINION AND ORDER

Before the Court is a Motion to Dismiss and Brief in Support ("Motion to Dismiss") filed by Defendant Freedom From Religion Foundation ("Defendant"). Dkt. No. 17. Defendant asks the Court to dismiss the Complaint [Dkt. No. 2] brought by the Oklahoma State Department of Education ("OSDE") and Ryan Walters, in his official capacity as Superintendent of Public Instruction, and in his individual capacity ("Superintendent Walters") (together, "Plaintiffs"). *Id*. at 1. Plaintiffs filed a response in opposition [Dkt. No. 24] and Defendant filed a reply [Dkt. No. 28]. This matter is now ripe for decision.

## PROCEDURAL BACKGROUND

On March 31, 2025, Plaintiffs filed their Complaint seeking both declaratory and injunctive relief from this Court. Dkt. No. 2. Specifically, the Complaint alleges that Defendant "has interfered with and will continue to interfere with [Plaintiffs'] statutory authority to govern Oklahoma's public schools." *Id*. at 8. Plaintiffs urge that both declaratory and injunctive relief

are necessary "to ensure that [Plaintiffs] can faithfully execute their duties, as well as protect the constitutional rights of Oklahoma's public school students." *Id*.

On May 9, 2025, Defendant filed the instant Motion to Dismiss. Dkt. No. 17. Defendant argues that the Complaint should be dismissed for four (4) reasons: "(1) lack of standing under Article III of the United States Constitution; (2) failure to demonstrate subject matter jurisdiction under 28 U.S.C. § 1331; (3) filing a frivolous lawsuit targeting First Amendment protected expression pursuant to the Oklahoma Citizens Participation Act ("OCPA"); and (4) failure to state a claim upon which relief can be granted as required by Fed. R. Civ. P. 8 and 12(b)(6)." *Id*.

## FACTUAL BACKGROUND

On December 17, 2024, Defendant, a nonprofit advocacy group, sent a letter to Achille Public Schools ("APS") Superintendent Rick Beene ("Superintendent Beene") regarding "unconstitutional school-sponsored prayer and [B]ible readings." Dkt. No. 2-2 at 2. Specifically, the letter stated that "[a] concerned parent report[ed] that [APS] implemented a policy allowing teachers to read Bible verses at the beginning of their classes" and, further, that APS "has a custom and practice of beginning each school day with a 'mandatory student-led prayer' over the schools' intercom systems." *Id*. The letter requested that APS "cease permitting teachers to give students Bible lessons" and "ensure its schools refrain from coercing students to observe and participate in school-sponsored prayer." *Id*. The letter set forth the legal basis for its assertion that school-sponsored prayer and Bible readings are unconstitutional. Dkt. No. 2-2 at 3. The letter concluded with a request that Superintendent Beene "respond in writing with the steps [APS] is taking to address" the complaint so that Defendant may inform the concerned parent. *Id*. at 4.

Separately, on February 7, 2018, Defendant sent a letter to Putnam City Schools ("PCS") Superintendent Fred Rhodes ("Superintendent Rhodes") regarding a complaint from a "concerned

area resident" regarding a designated "team chaplain" for the Putnam City High School football team. Dkt. No. 2-3 at 2. Specifically, the letter detailed concerns that the team chaplain was leading the team in prayers and proselytizing to the players. *Id*. The letter set forth the legal basis for its assertion that school-sponsored prayer and the advancement or promotion of religion by a public school through a team chaplain are unconstitutional. *Id*. at 2-3. The letter asked PCS to "commence an immediate investigation into this complaint and take action to stop coaches and other school representatives from organizing, leading, or participating in prayers with student athletes at practices or games" and to "take appropriate actions to end its chaplaincy program." *Id*. at 3. The letter further requested that Superintendent Rhodes respond in writing with the steps taken to remedy the complaint. Dkt. No. 2-3 at 3.

## DISCUSSION

Article III of the United States Constitution limits the judicial power of the federal courts so that they may only exercise jurisdiction over justiciable "Cases" and "Controversies." U.S. CONST. art. III, § 2; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992); *Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1298 (10th Cir. 2008). "The case-or-controversy requirement 'is satisfied only where a plaintiff has standing.'" *Protocols*, 549 F.3d at 1298 (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008)). Whether a plaintiff has Article III standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L.Ed.2d 343 (1975). To establish standing, a plaintiff must show: "(1) 'an injury in fact that is both concrete and particularized as well as actual or imminent'; (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury would be redressed by a favorable

decision." *Protocols*, 549 F.3d at 1298 (quoting *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1241 (10th Cir. 2008)).

Because standing is jurisdictional, a motion to dismiss for lack of standing is properly assessed under Federal Rule of Civil Procedure 12(b)(1). *See Colo. Env't Coal. v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004). Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). A facial attack "questions the sufficiency of the complaint," and when "reviewing a facial attack . . . a district court must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (internal citation omitted) *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Here, Defendant's Motion to Dismiss asserts a facial attack on Plaintiffs' Complaint. Specifically, Defendant argues that the Complaint is insufficient on its face to demonstrate an injury in fact. To establish an injury in fact, Plaintiffs must show that they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *See Lujan*, 504 U.S. at 560 (internal quotation marks omitted). A "particularized" injury means that it "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (internal citations omitted). For an injury to be "concrete," it "must actually exist" and be real. *Id*. at 340. Further,

4

a "threatened injury must be certainly impending to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis and quotations omitted).

The Complaint alleges that Defendant "has interfered with and will continue to interfere with [Plaintiffs'] statutory authority to govern Oklahoma's public schools" and further argues that "[d]eclaratory and injunctive relief is both necessary and proper to ensure that [Plaintiffs] can faithfully execute their duties, as well as protect the constitutional rights of Oklahoma's public school students." Dkt. No. 2 at 8. Plaintiffs clarify in their response that they have been injured because Defendant has infringed on their "statutory and constitutional authority to administer the public school system." Dkt. No. 24 at 1-2. However, this bare assertion is neither concrete nor particularized. How do Defendant's letters interfere with Plaintiffs' authority or ability to administer Oklahoma's public schools? In what way are Plaintiffs precluded from administering Oklahoma's public schools because of Defendant's letters? What have Plaintiffs intended to do, but have been unable to, because of Defendant's letters? The Complaint does not answer these questions. Plaintiffs have not alleged that they have suffered some actual or threatened injury. Plaintiffs' generalized statement of injury is nothing more than conjecture.

Further, Plaintiffs acknowledge that "[w]hen school districts are accused of violating either the Oklahoma Constitution or the policies and procedures implemented by the OSDE, it is the OSDE's responsibility to address those accusations, make findings of fact and conclusions of law, and implement any necessary corrective measures." Dkt. No. 24 at 13. In essence, Plaintiffs concede that addressing the types of letters it complains of in this lawsuit is part of Plaintiffs' duties. Yet, Plaintiffs say that they are harmed because "[e]ach time a district receives a cease-and-desist demand from [Defendant], OSDE must expend valuable time and resources to address

it."[1]  Dkt. No. 24 at 13.  Both things cannot be true.  Plaintiffs cannot be both performing their duties by addressing the letters and impeded from performing their duties by addressing the letters.

The Court also notes that while Plaintiffs complain of "Defendant's continued interference with the day-to-day-operations . . . of Oklahoma's public schools . . . ," Plaintiffs only complain of two (2) letters sent by Defendant to two (2) Oklahoma public schools in the past seven (7) years. Dkt. No. 24 at 14; Dkt. No. 2 at 19-20.  Again, the Complaint does not explain how these letters have interfered with day-to-day operations in any real way.  Indeed, it appears that upon receiving these letters, the recipient schools simply forwarded the letters to OSDE for guidance, which, as discussed earlier, appears to be within the scope of Plaintiffs' duties.  Dkt. No. 24 at 12.

Plaintiffs' Complaint also vaguely alludes that Plaintiffs' injury is the "chilling effect" caused by Defendant's letters.  Dkt. No. 2 at 15.  In support of this, Plaintiffs cite to *Rio Grande Found v. Oliver*, 57 F.4th 1147, 1160 (10th Cir. 2023) for the proposition that "an injury-in-fact exists where a chilling effect arises from an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences . . . ."  The *Rio* Court acknowledged a three-part framework to determine whether a party has standing based upon a prospective injury.

> [P]laintiffs in a suit for prospective relief based on a "chilling effect" on speech can satisfy the requirement that their claim of injury be "concrete and particularized" by (1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so because of a credible threat that the statute will be enforced.

---

[1]  Undoubtedly, Plaintiffs have expended valuable time and resources in filing this lawsuit. However, Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm . . . ." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 416 (2013) (citing *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam); *National Family Planning & Reproductive Health Assn., Inc.*, 468 F.3d 826, 831 (C.A.D.C. 2006)).

*Rio*, 57 F.4th at 1161 (quoting *Initiative and Referendum Institute v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006)).  The Court notes that *Rio* and *Walker* considered the chilling effect on nonprofit advocacy groups based on government action.  Here, Plaintiffs ask the Court to consider the chilling effect on the government based on a nonprofit advocacy group's action.  The Court finds that the *Rio* and *Walker* cases are plainly distinguishable, and, following, the framework set forth in *Rio* and *Walker* is inapplicable in this case.

However, even if it did apply, Plaintiffs have failed to sufficiently demonstrate standing under the framework.  Indeed, the Complaint does not allege that it has stopped executing its duties or ceased administration of Oklahoma's public schools because of Defendant's letters.[2]  Nor does the Complaint allege that the schools have ceased any policies or practices because of Defendant's letters.[3]

For these reasons, the Court finds that Plaintiffs have failed to show an injury in fact.  Accordingly, Plaintiffs lack standing and this Court lacks jurisdiction.  As this issue is dispositive as to Plaintiffs' claims, the Court need not address additional arguments set forth in the parties' briefing, and this action must be dismissed.

---

[2] Notably, despite Defendant's letters, the Complaint states that "[t]hroughout his tenue in office, Superintendent Walters has actively sought to address the dismantling of faith and family values in public schools . . . ," including announcing a "directive to provide Bibles 'explicitly for use in schools'" and establishing the "'Office of Religious Liberty and Patriotism' at the State Department of Education." Dkt. No. 2 at 17-18.  This runs contrary to the assertion that the letters had any sort of a "chilling effect."

[3] The Complaint alleges that, contrary to the accusations in Defendant's letters, the schools are acting lawfully.  *See* Dkt. No. 2-4 at 2-3.  For example, while the letter to APS accused the school of beginning each school day with "mandatory student-led prayer," Plaintiffs state that APS actually provides "daily student-led morning announcements which include a statutorily required moment of reflection." Dkt. No. 2 at 19.  If the letters inaccurately described the schools' conduct, it seems that the easiest course of action would have been to respond explaining the misunderstanding, or to simply take no action at all.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss and Brief in Support [Dkt. No. 17] is GRANTED and this action is DISMISSED without prejudice.

Dated this 13th day of August 2025.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE